Story, Justice,
 

 delivered the opinion of the court. — This is a writ of error to the circuit court of the district of Columbia, sitting in the county of Washington. The original action was brought by the plaintiff in error, to recover the amount of one-half of the prize of $25,000, which was drawn in a lottery authorized by the corporation of Washington, by ticket No. 5591, of which the plaintiff asserted himself to be the owner and possessor, in the manner hereafter stated. The declaration was for money had and received ; and it was- agreed by the parties, to state a case, and if upon the case so stated, the court should be of opinion, that the corporation were liable to the plaintiff for the half of the prize sued for, judgment should be rendered upon the declaration for the amount due him accordingly. It was further agreed, that the question of the admissibility, competency and sufficiency of the evidence to maintain the action, should be submitted to the court ; and that in considering the evidence, the court should draw from it, so far as it was admissible and competent, every inference of fact and law which it would have been competent for a jury to have drawn from it. Upon this case, the circuit court gave judgment for the corporation, and the present writ of error is brought to review that judgment. i
 

 The lottery was the same, which was brought before this court for consideration in the case of
 
 Clark
 
 v.
 
 Corporation of Washington,
 
 12 Wheat. 40 ; and the leading facts being the same, it is unnecessary to do more than advert to those facts, which are peculiar to this case, and furnish the ground of argument to distinguish it from the former.
 

 The decision in that case was, that the lottery was the lottery of the corporation ; that the tickets issued were the tickets of the corporation, contained a promise of the corporation, *made by its authorized agent, to _ pay such prizes as should be drawn by them ; that the sale of all the tickets in the lottery to Gillespie, under the contract made by him with the managers, was not a sale of an independent right to draw the lottery for himself, and on his own responsibility alone, but was in effect a sale of the profits of the lottery for a given sum. And the reasoning in the case shows, that Gillespie became the absolute owner of all the whole tickets signed in behalf of the corporation and delivered to him, but not of those unsigned ; and of course, the possessors of such signed tickets, whether himself or subsequent purchasers, were entitled to the prizes drawn to them from the corporation as promisees. If, therefore, the plaintiff in the present case -had been the possessor of the whole ticket, which drew the prize of $25,000, he
 
 *252
 
 would have been clearly entitled to recover it from the corporation. But the whole ticket was in the hands of Gillespie, as possessor; and it was (as the state of the facts shows) delivered by him to the corporation, after the prize was drawn, without any notice on their part of any sub-interest in another ; and that upon such delivery, Gillespie received back from the corporation an equivalent value, in securities previously deposited by him with the corporation for the payment of prizes. As between Gillespie and themselves, the corporation have paid the prize ; they have paid it to the possessor, according to the terms of the ticket; and the question is, whether, under these circumstances, they are still liable to pay to the plaintiff, as owner of the half ticket, one-half of the amount, notwithstanding they had no notice of his interest or title ?
 

 It is in evidence in the case, that all tickets sold in the lottery were sold by Gillespie, or his agents, and for his benefit; and all the moneys arising therefrom were received by him or his agents. This was, on his part, a proper proceeding ; for by the very terms of the contract, he was entitled to all the tickets signed and delivered to him ; and when he sold these tickets, he sold them as owner, on his own account, having already acquired a legal title thereto from the corporation. No half or quarter tickets were ever signed or issued by the managers of the lottery, or any of them. But it is * si in evidence, that one Webb, as clerk of Gillespie, was in the habit *of selling whole tickets, half tickets, and quarter tickets, and that, as the clerk of Gillespie, be sold to the plaintiff one-half of the ticket No. 5591. The whole ticket No. 5591 was signed by the president of the board of managers. The half or sub-ticket, purchased by the plaintiff, was in the following terms : “National Lottery: — Gillespie’s lottery office : — -No. 5591. This ticket will entitle the possessor to one-half of such prize as may be drawn to its number, if demanded within twelve months after the completion of the drawing ; subject to a deduction of fifteen per cent; payable sixty days after the drawing is finished. Washington City, February 7th, 1821. D. Gillespie, per John F. Webb :” and in the margin there was an abstract of the prizes to be drawn in the lottery. Does this sub-ticket constitute a contract, by which the corporation were bound to pay half the prize to the possessor, or is it the mere private contract of Gillespie ? Upon the face of the paper, it purports to be a contract, not for or on behalf of the corporation, but for and in behalf of Gillespie, by his agent Webb. Gillespie, and not the corporation, promises to pay the half prize drawn to it. In what manner, then, can it bind the corporation ?
 

 In the first place, it was entirely competent for for Gillespie to enter into such a contract on his own account. As owner and possessor of the whole ticket, if he had made sale of the whole, it would have been on his account; for he, who sells as owner, cannot, in any just use of language, be said to sell as agent. He would have conveyed his own title, as he then held it, and not as agent of another. He would have substituted another as possessor and transferee, to whom the original promise of the corporation would then have attached. But Gillespie, as owner, had also a perfect right to sell any portion of such ticket, less than the whole. The parly to whom he should sell would thus become a joint owner with him ; but not a joint owner in virtue of any new contract made by the corporation, but by Gillespie, in his own right, and on his own account. The corporation promise to pay the
 
 *253
 
 whole prize to the possessor of the whole ticket; but there is no promise on the face of the whole ticket that the corporation will pay any portion of the ¿>rize to any sub-holder of a * share ; and it is not in the power of a ' party, merely by his own acts, to split up a contract into fragments, *- and to make the promisor liable to every holder of a fragment for his share.
 

 The language of this court in
 
 Mandeville
 
 v.
 
 Welch,
 
 5 Wheat. 277, 286, leads to a very different conclusion. If .this had been the case of a banknote, payable to bearer, there is-no pretence to say, that a person claiming a moiety by contract with the bearer, could have maintained a suit against the bank upon such contract, for the moiety, when the note itself had been surrendered up to the bank by the bearer. In what respect does such a case differ from the present ? Suppose, after this sub-ticket was issued, Gillespie had sold and delivered the whole ticket to another person, having no notice ; would not the latter have been entitled to recover the whole prize from the corporation ? If so, would the corporation still be liable to pay the half prize to the plaintiff ? If not, in what respect does the ease at bar differ in principle from that put; since, in legal effect, the prize has been paid to the real possessor of the whole ticket? By the contract contained on the face of the whole ticket, the corporation promised to pay the possessor of it, the prize drawn by it. They have done so. How then can their liability upon the face of the instrument be extended to claims by persons entering into sub-contracts with the holder of the ticket ?
 

 But in the next place, it is said, that Gillespie was the agent of the corporation in signing and issuing these sub-tickets, and that they arc, therefore,' evidence of a contract by the corporation with the holder of the sub-ticket, that the corporation will pay the proportion of the prizes drawn by them. Let us see, how far this proposition is borne out by the evidence. In the first place, the only evidence of such a contract with the plaintiff, is the sub-ticket itself ; and that, as we have seen, purports on its face to be a contract, not of the corporation, but of Gillespie. It is certainly very difficult to maintain, that in a court of law, any parol evidence is admissible, substantially to change the purpose and effect of a written instrument, and to impose upon it a sense, which its terms not only do not imply, but expressly repel. Even if it were otherwise, there is not the slightest evidence in this case, that Webb was ever authorized by the corporation to be their agent for any purpose ^whatsoever. On the contrary, Webb „ himself expressly states, that he issued and sold this sub-ticket, and >- signed the same, as clerk of, and for, Gillespie ; and he adds, that all the tickets sold in the lottery were sold for the benefit of Gillespie. So that his own view of the matter is, that he was the agent, not of the corporation, but of Gillespie.
 

 But it has been argued, that Gillespie was himself the agent of the corporation in the sale of the whole tickets, and by fair implication, in the sale of the sub-tickets also. If it were so, it would still be difficult to show, that he had right to delegate such authority to his clerk, or that without such delegation, the act of the clerk bound the corporation ; for the general rule of law is, that a delegated authority cannot be delegated.
 

 But waiving any consideration of this point, let us see, whether the evidence contains any such authority to Gillespie himself. In the first place, did he act as agent of the corporation, in selling the whole tickets, or as
 
 *254
 
 owner of them? The evidence in the case (as has been repeatedly stated) is, that he was the owner of the whole tickets; that he sold them and received the moneys for them on his own account. And if he was the owner, it is difficult to perceive, how he could act as agent of another in the sale of what was exclusively his own property. But the whole tickets were signed by the president of the mauagers, and with their consent; and thus bound the corporation as the act of their authorized agent. None of the sub-tickets were so signed or issued ; but they were signed in behalf of Gillespie only. This alone shows, that the managers did not contemplate the issue of any but whole tickets to bind the corporation. If they had contemplated any issue of sub-tickets, why where the latter not also signed by the president and delivered to Gillespie? The contract between the managers and Gillespie does not contain any provision respecting the issue of sub-tickets ; nor does it appear, that Gillespie ever requested the managers to sign or deliver any. But it is said, that it may be inferred from the other circumstances of the case, that Gillespie was authorized to issue such sub-tickets.; and the advertisements published in the papers by Gillespie, in which he announces the prizes, the names of the managers, and the offer of whole, half and quarter tickets for sale, raise an irresistible presumption of the * . . *fact. We do not think so. Those circumstances are, to say the -■ least, quite as consistent with the exercise of this right on his own account, as with the exercise of any right as agent of the corporation. He was owner of all the whole tickets; and he certainly had a right to dispose of them in any manner which he might deem best for his own interest, whether it was in was in wholes, or halves or quarters, or any other subdivisions. The corporation had no authority to obstruct or limit him in the full exercise of this right; and any contract, which he should make with third persons, for the sale of sub-interests in a single ticket, the corporation had as little to do with, as they would have with a contract to sell a hundred or thousand tickets to the same persons. Their contract was to pay the possessor of the whole ticket any prize which it might draw.. Beyond that, they were not bound to inquire into or take notice of any sub-interest, whether equitable or legal, acquired under Gillespie. In point of fact, it should seem, as well from Webb’s testimony, as from the conduct of Gillespie, that he so understood the matter; for there is no evidence that he ever made any returns to the managers of the issues of such sub-tickets, or in any other manner consulted them on the subject; or that they took any step to guard themselves from a double issue of the whole ticket, or of sub-tickets of the same number. When the managers took so much care to limit and control the issue of whole tickets, by refusing to sign them, except as Gillepsie furnished them with security for payment; is it to be believed, that they had yet intrusted him with an unlimited power to issue sub-tickets binding the corporation, which might, and indeed, would, defeat the whole effect of these precautions? It seems to us not. And the very form of the sub-ticket itself, is strong corroborative evidence to repel the presumption, that the corporation intended to bind themselves otherwise than by the written signature of one of their own managers, who were specially deputed to conduct the sale and drawing of of the lottery ; and there is much reason to doubt, if the managers could have deputed their rights or duties in this
 
 *255
 
 respect to any third person, so that he could enter into contra its for and to bind the corporation.
 

 Upon the whole, it is the opinion of the court, that the plaintiff in this case is not entitled to recover, his '^contract not being with the corpora-
 
 r¡í.
 
 tion or their agent, but solely with Gillespie. This view of the case <- ' renders it unnecessary to consider the other question made at the bar, whether the lottery was or was not illegal in its scheme and origin.
 

 This case has come before the court under an unusual agreement of the parties, by which matters of fact, properly cognisable by a jury, are submitted to our judgment. We desire to be understood, as not admitting, that it is competent for the parties, by any such agreement, to impose this duty upon the court. The peculiar circumstances of this case furnish a sufficient apology for this agreement. But it is not to be drawn into precedent. The judgment of the circuit court is affirmed, with costs.
 

 This cause came on to be heard, on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel: On consideration whereof, it is considered, ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is heréby affirmed, with costs.