PHILLIPS, Senior Circuit Judge.
 

 Defendant Lewis A. Zipkin, an attorney, was indicted and convicted of violating 18 U.S.C. § 153
 
 [1]
 
 by knowingly and fraudulently appropriating to his own use $6,000 belonging to Greenwood Village, Incorporated, a bankrupt estate for whom Zipkin was serving as receiver. We conclude that the district judge improperly permitted opinion testimony of a bankruptcy judge on a question of law to be introduced at trial. We further hold that the district judge erred in permitting the bankruptcy judge to interpret an order he issued in a bankruptcy proceeding. The introduction of this evidence was permitted by the district judge over the objections of defense counsel. This Court is of the opinion that the foregoing testimony was highly prejudicial and constituted reversible error. Accordingly, we reverse the conviction.
 

 I
 

 On September 21, 1976, by order of Bankruptcy Judge John F. Ray, Jr., Lewis A. Zipkin, defendant-appellant, was appointed receiver of Greenwood Village, Incorporated (Greenwood Village), a bankrupt estate. On August 24, 1977 Judge Ray issued an order pertaining to the Greenwood Village estate, which in part provided, “that upon payment to Lewis A. Zipkin, Receiver, of the sum of $6,000.00 for attorneys’ fees on units processed and sold by the Trustee and Receiver,” Zipkin
 
 *386
 
 was to assign to First Federal Savings and Loan Association of Cleveland (First Federal) various savings accounts.
 

 On September 6, 1977, a check from First Federal to Zipkin was deposited in Zipkin’s law firm account. In reports filed with the bankruptcy court, by the Receiver (Zipkin), the $6,000.00 was listed as “cash on hand” of the Greenwood Village estate. This “cash on hand” figure came to the attention of Judge Ray in June 1978. On June 15, 1978 Judge Ray discussed the matter with the Chief Judge of the United States District Court for the Northern District of Ohio, and Thomas Pavlik, attorney for Zip-kin in his capacity as Receiver of the Greenwood Village estate. Pavlik advised Judge Ray that Zipkin had informed him (Pavlik) that he was using the money. Judge Ray also attempted to meet with the defendant, but Zipkin was unable to meet until the following day. On June 15, 1978 defendant deposited $6,000.00 from his law firm account into the account of Greenwood Village. This check was dated October 15, 1977. Subsequent meetings were held concerning the $6,000.00. Judge Ray asked Zipkin to demonstrate that the $6,000.00 had been carried in a “special account” for the Greenwood Village estate. The only evidence introduced were bank records indicating that during the period in question there was over $7,000 in an account under the names of Lewis A. Zipkin and his brother, Herbert F. Zipkin. The record indicates that on November 28, 1977, the balance in Zipkin’s law firm account was $73.64.
 

 On August 31, 1982, some four years after the incidents in question, Lewis Zip-kin was indicted by a grand jury charging that from September 6, 1977 through June 15, 1978, he “did knowingly and fraudulently spend, embezzle and appropriate to his own use property, that is, Six Thousand Dollars ($6,000.) belonging to the estate of Greenwood Village, Inc.” in violation of 18 U.S.C. § 153. Defendant was arraigned on September 9, 1982 and pleaded not guilty. Trial began on October 12, 1982 and on October 18, 1982, the jury returned a verdict of guilty. Zipkin was placed on probation for three years and ordered to pay a fine of $3,000. The district judge denied motions for judgment of acquittal and for a new trial, and this appeal ensued:
 

 Appellant raises numerous assertions of error by the district court, two of which are of particular concern to this court. Appellant contends his conviction should be reversed because the trial judge erred in (1) admitting testimony of a bankruptcy judge and two lawyers about the bankruptcy law in 1977 concerning the payment of interim compensation to a receiver; and (2) in permitting the bankruptcy judge to interpret the meaning of the August 24, 1977 order concerning the payment of $6,000.00 in fees to defendant.
 

 II
 

 Bankruptcy Judge John F. Ray, Jr. was permitted to testify at the trial, over objections of defense counsel, as follows:
 

 Q. Under the Bankruptcy Act, under which this petition was filed, was there a provision in the Bankruptcy Act for a Receiver to receive interim fees?
 

 Mr. Messerman: Objection
 

 The Court: Overruled
 

 A. (Judge Ray): No.
 

 Q. Was it possible for a receiver to obtain interim fees even if there was no provision?
 

 Mr. Messerman [Defense Counsel]: Objection
 

 The Court: Overruled
 

 A. (Judge Ray): No.
 

 On cross-examination Judge Ray testified that he did not believe that the bankruptcy law prior to 1978 permitted interim fees to receivers. On further cross-examination defense counsel demonstrated that the bankruptcy law did not prohibit interim compensation, but rather that it was Judge Ray’s practice not to award such fees.
 

 Appellant contends that despite efforts by defense counsel during cross-examination to show that Judge Ray’s views of the law were erroneous, permitting a bankruptcy judge to testify as to matters
 
 *387
 
 of law violates the general rule that only the trial judge may instruct the jury as to the law. Further, appellant contends that the introduction of such testimony is prejudicial error. We agree.
 

 Federal Rule of Evidence 704 permits a witness to testify in the form of an opinion or inference to an “ultimate issue to be decided by the trier of fact.” However, “[i]t is not for the witnesses to instruct the jury as to applicable principles of law, but for the judge.”
 
 Marx & Co., Inc. v. Diner’s Club,
 
 550 F.2d 505, 509-510 (2d Cir.)
 
 cert. denied
 
 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). In
 
 Marx,
 
 the Second Circuit ruled the trial court was in error when it permitted a witness — a lawyer, qualified as an expert in securities regulation — to testify as to the legal obligations of the parties under a contract.
 
 Id.
 
 at 509. Expert testimony on the law is excluded because the trial judge does not need the judgment of witnesses. “[T]he judge (or the jury as instructed by the judge) can determine equally well” the law. VII
 
 Wig-more on Evidence
 
 § 1952 (Chadbourn rev. 1978);
 
 Marx, supra,
 
 550 F.2d at 510. The special legal knowledge of the judge makes the witnesses’ testimony superfluous.
 
 Id.
 

 It is the function of the trial judge to determine the law of the case. It is impermissible to delegate that function to a jury through the submission of testimony on controlling legal principles.
 
 See Stoler v. Penn Central Transportation,
 
 583 F.2d 896 (6th Cir.1978) (no abuse of discretion to prohibit expert witness from testifying that he believed crossing was “extrahazardous” since the expert was being asked for what amounted to a legal opinion);
 
 Cooley v. United States,
 
 501 F.2d 1249, 1253-54 (9th Cir.1974),
 
 cert. denied
 
 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975). (In the orderly trial of a case, the law is given to the jury by the court and not introduced as evidence. It would be most confusing to a jury to have legal material introduced as evidence.);
 
 United States v. Phillips,
 
 478 F.2d 743 (5th Cir.1973) (Prosecutor’s presentation through conclusory expert testimony of its claim to make a warrant insulated the Government from having to point out to the court the statutes, regulations and case law which would have brought to the surface the questions of law involved.)
 

 In the case at bar we conclude that the testimony of Judge Ray on a question of law was improperly introduced, and its introduction was prejudicial. A jury listening to a bankruptcy judge testify as to a question of bankruptcy law would be expected to give special credence to such testimony. It was not proper for the witness to testify as to a legal conclusion; it is the sole function of the trial judge to instruct the jury on the law. In the present case the district judge erred by delegating in part that responsibility.
 

 The Government contends that even if it was error to have Judge Ray testify as to the law, there is no prejudicial error because defense counsel demonstrated on cross-examination that Judge Ray’s view of the law was erroneous. We do not agree. Although defense counsel made a diligent effort to discredit Judge Ray’s direct testimony, we cannot conclude that there was no prejudice. The testimony of Judge Ray included his legal conclusions. These are not a proper subject of testimony and their prejudicial effect substantially outweighed any probative value they might have had.
 
 [2]
 
 In effect Judge Ray’s testimony amounted to a statement that under the applicable law the defendant was guilty. Such testimony from a bankruptcy judge obviously would have impact upon a jury.
 

 We hold therefore that the district court committed reversible error in admitting this testimony.
 

 
 *388
 
 III
 

 Appellant further asserts the district judge erred in permitting Bankruptcy Judge Ray to interpret the meaning of the August 24, 1977 order concerning the payment of $6,000.00 in fees to Lewis A. Zip-kin.
 
 [3]
 

 On direct examination Bankruptcy Judge Ray testified as to the meaning of the order stating:
 

 Q. Can you please identify that? [Exhibit 2]
 

 A. [Judge Ray] This is a journal entry signed by me as of October [sic August] the 24th, 1977, where it is releasing funds to First Federal Savings & Loan of Cleveland from savings accounts that were on deposit with them, which represented the proceeds from the sale of condominiums of Greenwood Village, upon which they held the first mortgage at the time. of sale.
 

 Q. Does • your signature appear upon that order?
 

 A. It does.
 

 Q. Does that order make any mention of monies to be paid by First Federal into the Greenwood Village account?
 

 A. It does.
 

 Q. What amount was to be paid?
 

 A. $6,000.
 

 Q. And where was that money to go?
 

 MR. MESSERMAN: Objection, your Honor. The order does not so state.
 

 Q. Pursuant to the order, Judge Ray, where were the funds to go?
 

 MR. MESSERMAN: Objection.
 

 THE WITNESS: May I answer?
 

 THE COURT: Overruled.
 

 A. The funds were to be deposited into the Greenwood Village account.
 

 On redirect, Judge Ray again testified as to his interpretation of the order:
 

 Q. In the order that is marked Government’s Exhibit No. 2, you read a line concerning the $6,000. Could you please repeat that particular sentence?
 

 A. [Judge Ray] “It is therefore ordered that upon payment to Lewis A. Zipkin, Receiver, of the sum of $6,000 for attorney fees'on units processed and sold by the trustee and receiver that the receiver assign to First Federal Savings & Loan Association of Cleveland the following savings account ...”
 

 Q. To your knowledge, who performed those legal services that are mentioned in that order?
 

 A. The attorneys for the Greenwood Village estate, Pavlik, Rubenstein, Paul Weick, Eugene Selker.
 

 Q. Was it your testimony on direct examination that the $6,000 was to be for the benefit of the estate?
 

 A. It was to be—
 

 MR. MESSERMAN: Objection.
 

 A. —for the benefit of the estate— THE COURT: Overruled.
 

 A. —to reimburse them for charges to be made by the attorneys for the estate.
 

 BY MR. FRENCH:
 

 Q. In fact, is that August of ’77 order an order to pay attorney fees?
 

 A. No, sir.
 

 Q. What is it?
 

 MR. MESSERMAN: Objection.
 

 A. It’s an order on the bank—
 

 THE COURT: Overruled.
 

 A. —to reimburse the estate for handling the sale of condominiums upon which they had mortgages, and which the attorneys for the estate rendered services in closing out the sales.
 

 MR. FRENCH: Thank you, your Honor.
 

 
 *389
 
 The interpretation of what Bankruptcy Judge Ray meant by the August 24, 1977 order went beyond the provisions of the written order. An order entered by a judge should speak for itself and not be varied by parol testimony as to what was meant by its provisions.
 
 Blue Mountain Iron and Steel Co. v. Portner,
 
 131 F. 57 (4th Cir.)
 
 cert. denied
 
 195 U.S. 636, 25 S.Ct. 793, 49 L.Ed. 355 (1904)
 
 citing Shankland v. Washington,
 
 5 Pet. 390, 30 U.S. 390, 8 L.Ed. 166 (1831).
 
 See generally Annon.,
 
 86 A.L.R.3d 633 (1978). It was error for the trial judge to permit Bankruptcy Judge Ray to testify as to his understanding of what his order meant.
 

 The understanding of what Judge Ray interpreted the order to mean is wholly irrelevant to defendant’s guilt and there was absolutely no probative value in having Judge Ray testify as to the meaning of the order, where the order was available, and was in fact introduced into evidence. Judge Ray’s testimony that pursuant to the order the $6,000 was “to be deposited in the Greenwood Village Account” was highly prejudicial where in fact the order did not so state. Such parol testimony some five years after the issuance of the order cannot be permitted.
 
 See 3 Corbin on Contracts
 
 § 554 (1960) (Determination of legal operation of a contract is always a matter of law for the court.)
 
 Accord Loeb v. Hammond,
 
 407 F.2d 779 (7th Cir.1969) (testimony of attorney on legal significance of documents was properly excluded.) In effect, Judge Ray was being asked to testify as to the legal obligations imposed by his order. As noted in Part II of this opinion,
 
 supra,
 
 legal conclusions or principles are not the proper subject of testimony by a witness, and therefore they should have been excluded. We hold the admission of such statements was prejudicial error.
 

 IV
 

 Appellant further contends that the trial judge erred in permitting the Government to introduce records from Lewis Zipkin’s divorce proceeding for the purpose of proving appellant committed the offense because he needed the money. In view of the disposition made in Parts II and III of this opinion, it is not necessary for this Court to pass upon this contention on the present appeal. However, we shall discuss it for the guidance of the district court in event of a new trial.
 

 Appellant concedes there is no firm rule prohibiting the introduction of such evidence, but argues that the prejudicial effect of this evidence substantially outweighed its probative value. The evidence showed that defendant had paid only $1,300 in taxes for 1977, that he earned only $6,000 from his law firm, and that he had substantial debts.
 

 Rule 403 of the Federal Rules of Evidence provides:
 

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 

 Under Rule 403 this Court has recognized that “the admission of relevant potentially prejudicial evidence is placed within the sound discretion of the trial court. Such discretion must be exercised by balancing the probative value of the evidence against its prejudicial attributes. If in the discretion of the court the probative value of the evidence is
 
 substantially
 
 outweighed by its prejudicial character, the evidence is inadmissible.” (emphasis supplied).
 
 United States v. Brady,
 
 595 F.2d 359, 361 (6th Cir.)
 
 cert. denied
 
 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979).
 
 Accord United States v. Hans,
 
 684 F.2d 343 (6th Cir.1982);
 
 United States v. Phillips,
 
 575 F.2d 97 (6th Cir.1978);
 
 United States v. Green,
 
 548 F.2d 1261 (6th Cir.1977). Appellate court review of this discretion is limited. We must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.
 
 Hans, supra,
 
 684 F.2d at 346,
 
 quoting with approval Brady, supra,
 
 595 F.2d at
 
 *390
 
 361;
 
 Green, supra
 
 548 F.2d at 1268.
 
 See 1
 
 J. Weinstein & M. Berger, Weinstein’s Evidence 11403[03] (1982). (“The usual approach on the. question of admissibility on appeal is to view both probative force and prejudice most favorable towards the proponent, that is to say, to give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.”) “If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.”
 
 United States v. Long,
 
 574 F.2d 761, 767 (3d Cir.)
 
 cert. denied
 
 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978). “[T]he draftsmen intended that the trial judge be given a very substantial discretion in ‘balancing’ probative value on the one hand and ‘unfair prejudice’ on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise...”
 
 Id.
 

 In seeking the admission of testimony given by Mr. Zipkin in divorce proceedings before a referee in Domestic Relations Court of Common Pleas, concerning his financial worth, the Government argued the evidence was probative in that it established a motive for committing the crime.
 

 There is no definitive rule barring the admission of such evidence. However, we note, as the district judge himself noted, the relatively low probative value and the potentially prejudicial effect of this evidence. To establish motive for a theft offense by demonstrating impecuniosity of a defendant requires a chain of inferences that is highly speculative. In addition, the state of defendant’s financial affairs during 1977 was complex and selected excerpts of his testimony from the divorce proceedings cannot fairly be said to have presented a complete picture of defendant’s financial condition.
 

 “[Ejvidence of financial circumstances is ordinarily not relevant. This is true in a criminal action as well as in civil actions and evidence of the financial condition of the defendant is ordinarily not admissable, though the receiving of such evidence may or may not be found to be prejudicial error, depending on the circumstances.” 1
 
 Jones on Evidence
 
 § 4:47 (6th ed. 1972);
 
 Annon.
 
 36 A.L.R.3d 839 (1971). The Third Circuit has noted:
 

 “It is fundamental to our conception of a fair trial that equality of treatment must be afforded to all without regard to differences in social status or economic condition. In a society which cherishes the ideal of equal justice for all and seeks to accord the equal protection of the laws to all those who are accused of crime, it would be difficult to accept any other view.
 

 Nevertheless, the special nature of the crime charged may justify the use of evidence of financial embarrassment in order to show the accused’s knowledge and motive, as where one is charged with embezzlement or similar financial misconduct.”
 

 United States ex rel Mertz v. New Jersey,
 
 423 F.2d 537, 541 (3d Cir.1970). (footnote omitted).
 

 As noted by Professor Wigmore, “[t]he lack of money by A might be relevant enough to show the probability of A’s desiring to
 
 commit a crime
 
 in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced ... [nevertheless in cases of merely peculative crime (such as larceny or embezzlement) ... the fact- that he was in need of it at the time is decidedly relevant.” II
 
 Wigmore on Evidence,
 
 § 392 (Chadb-ourn rev. 1979). “[D]efendant’s belief that he is in financial difficulty is admissible to show motive and not unduly prejudicial.”
 
 United States v. Reed,
 
 639 F.2d 896, 907 (2d Cir.1981) (Government sought to introduce letter from a bank to defendant stating he was behind in his mortgage payments in order to show motive for participation in a securities fraud scheme.)
 

 Given the inferences which must be drawn from such evidence, a trial court should be extremely cautious in admitting such evidence and the Government must
 
 *391
 
 have more than mere conjecture that impe-cuniosity was a motive, lest the poor be in position of being at greater suspicion of having committed a crime, even if a theft offense, because of the very fact of their impecuniosity. If the Government seeks to introduce this evidence again at the new trial, the district judge should consider with care the foregoing authorities in determining whether to admit into evidence the details of Zipkin’s financial condition.
 

 V
 

 The other errors asserted by Appellant have been considered and found to be without merit. However, as set forth above, we find the trial judge committed reversible error in permitting a witness to testify as to a question of law, questions of law being reserved solely for the trial judge. Further, we hold the trial judge erred in permitting Judge Ray to testify as to the meaning of his August 24, 1977 order. Accordingly, we reverse defendant’s conviction and remand the case for a new trial in proceedings not inconsistent with this opinion.
 

 [1]
 

 . Defendant was charged with using the $6,000 from September 1977 to June 15, 1978. 18 U.S.C. § 153 in effect during this period provides:
 

 § 153. Embezzlement by trustee, receiver or officer
 

 Whoever knowing and fraudulently appropriates to his own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate of a bankrupt which came into his charge as trustee, receiver, custodian, marshal, or other officer of the court, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 

 (Note: In November 1978, 18 U.S.C. § 153 was amended).
 

 [2]
 

 . Appellant also contends the trial judge erred in permitting Thomas Pavlik, the attorney for the Receiver, and Alan Goodman, an attorney who did hourly work for Appellant, to testify as to the law regarding the payment of interim compensation to receivers. Like the testimony of Judge Ray, their testimony was also not the proper subject of opinion testimony. We find, however, the testimony of Judge Ray, cloaked with the authority of his position as a bankruptcy judge, to be the most prejudicial and therefore we address it directly.
 

 [3]
 

 . The relevant portion of the order signed by Judge Ray provides:
 

 "This matter came on to be heard on the application of First Federal Savings and Loan Association of Cleveland for an order for distribution of funds produced by the sale of units covered by its mortgage, and the Court finds that said application is well taken. It is therefore ordered that upon payment to Lewis A. Zipkin, Receiver, of the sum of $6,000.00 for attorney fees on units processed and sold by the Trustee and Receiver, that the Receiver assign to First Federal Savings and Loan Association of Cleveland the following_”