899 F.2d 15
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Christie L. LINTON, Defendant-Appellant.
 No. 89-1383.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1990.
 
 Before BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Defendant appeals her conviction of conspiracy to possess with an intent to distribute a controlled substance containing amphetamine, in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)((C) and 846, and for possession with an intent to distribute a controlled substance containing amphetamine, contra 21 U.S.C. Secs. 841(a)(1) and 8941(b)(1)(C). She was sentenced to fifty-one months' imprisonment for each count, to run concurrently and to be followed by three years of supervised release, and assessed a $100 special assessment fee pursuant to the United States Sentencing Commission's Sentencing Guidelines.
 
 
 2
 On appeal, the defendant claims the district court erred in admitting evidence seized in violation of her fourth amendment rights, admitting evidence of uncharged misconduct pursuant to Fed.R.Evid. 404(b), and refusing to reduce the base offense level assigned to her under the United States Sentencing Commission's Sentencing Guidelines for her alleged mitigating role in the crimes. For the reasons discussed below, we affirm both the conviction and sentence.
 
 I.
 
 3
 On March 26, 1988, an unidentified man brought a twelve-inch long, six-inch wide package to the United Airlines Small Package Dispatch in San Diego, California to be transported to Lansing, Michigan. The package was addressed to "C. Linton" of 1230 West Willow, Apartment 13, in Lansing, Michigan. Because of the chemical odor of the package and the behavior of the mailer, the United Airlines agent to whom the package was given suspected that it contained contraband. He opened the package and found two plastic bags inside filled with a beige powder, wrapped in heavy paper toweling soaked with perfume. He immediately called the Drug Enforcement Administration ("DEA") office in San Diego about the powder.
 
 
 4
 Shortly thereafter, Special Agent Scott Hoernke went to the package facility to investigate the call. Hoernke met a United Airlines employee who showed him the opened package then stored in the facility's safe. Hoernke, who had no search warrant, could see one of the bags of powder inside the envelope. He removed it, opened it, and smelled its contents. He then took the package to the San Diego DEA office, tested the powder, and found that it contained amphetamine.
 
 
 5
 Hoernke subsequently arranged for a controlled delivery to "C. Linton," in Lansing, Michigan. He forwarded the package to DEA officials in Grand Rapids, Michigan, who picked it up and conducted another field test on its contents. The powder again tested positive for amphetamine. The Grand Rapids DEA agents then replaced the contraband with an inert substance, resealed the package, caused it to be delivered to the United Airlines freight terminal in Lansing's Metropolitan Airport for pick up, maintaining surveillance over the pickup point.
 
 
 6
 On March 30, 1988, a man, later identified as Alonzo Arturo Gomez, Jr., went to the United Airlines freight terminal and asked for the Linton package. A United Airlines employee told Gomez that the package was delayed in Chicago but could be picked up the next day around three o'clock. Gomez returned the next day about 3:20 p.m. with a woman later identified as the defendant, Christie Linton. Linton signed a claim form and left with Gomez, who took the package. Both were subsequently arrested and charged with conspiracy regarding, and possession of, the amphetamine.
 
 
 7
 In the course of investigating the case, DEA agents obtained a search warrant and conducted a search of Linton's apartment. Among the items found there were: 1) an empty bottle of Inositol (a common cocaine additive); 2) a grinder; 3) a telephone book; 4) a triple-beam scale; 5) a book entitled "The Cocaine Handbook"; and 6) Western Union money transfer applications made out to several different persons and a chashier's check to a known low-level drug dealer. After issuing subpoenas to Western Union, the DEA also secured eleven of Linton's recent money transfers totalling almost $44,000.
 
 
 8
 Prior to trial, the district court rejected Linton's claim that the DEA agents' warrantless testing of the powder was a seizure violating her fourth amendment rights. At trial, the court declined to exclude all the subsequently discovered evidence as Linton had requested and admitted the items listed above, pursuant to Fed.R.Evid. 404(b). Linton was convicted and this appeal followed.
 
 II.
 A.
 
 9
 Linton first argues that the district court erred in ruling that she lacked standing to challenge, on fourth amendment grounds, the propriety of the DEA agent's alleged seizure of the package when he took the powder for testing to the DEA's San Diego facility. We disagree.
 
 It is clear that:
 
 10
 A defendant has the burden of establishing his standing to challenge a search or seizure in violation of the fourth amendment. Rakas v. Illinois, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 423-24 n. 1, 58 L.Ed.2d 387 (1978). The defendant must satisfy a two-part test: 1) whether he manifested a subjective expectation of privacy in the object of the challenged search; and 2) whether society is prepared to recognize that expectation as legitimate. California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986).
 
 
 11
 United States v. Sangineto-Miranda, 859 F.2d 1501, 1510 (6th Cir.1988). Thus, Linton's assignment of error depends upon the legitimacy of her alleged expectation of privacy in the contents of the package.
 
 
 12
 In United States v. Barry, 673 F.2d 912 (6th Cir.), cert. denied, 459 U.S. 927 (1982), we established a simple test for determining whether one who entrusts contraband to a common carrier maintains any legitimate expectation of privacy concerning it. Defendant in that case alleged a fourth amendment violation by DEA officials who seized pill samples from an open package containing contraband that was mailed to him via Federal Express. Federal Express employees had seen four large bottles labeled "Methaqualone" inside the package when it arrived in a damaged condition at their Memphis, Tennessee facility. After opening the package, they alerted the DEA whose agents tested the contents and determined that the pills were contraband. The agents then arranged a controlled delivery to defendant who was arrested after picking up the package. Id. at 913-14.
 
 
 13
 This court determined that the DEA agents unlawfully seized the pill samples but found no fourth amendment violation because, "[i]n light of Barry's failure to take precautions to protect his privacy interest from the risk of exposure inherent in his bailment, we find that he had no reasonable expectation of privacy in his drug parcel." Id. at 919. We based this ruling on our conclusion that the privacy interest of persons who choose to transport contraband by way of a common carrier depends upon two factors, namely, "the risk of exposure and the incriminating appearance of the contraband." Applying those criteria in that case, we said:
 
 
 14
 The former is an external factor beyond the control of either of the two parties embroiled in the Fourth Amendment litigation. Yet the possibility that Federal Express would for some purpose open the package, be it for reasons of security, an accident, or damage, is a risk that must, or at least should have been considered by Barry when he decided to use their services. Barry chose to accept this risk. That decision could only serve to reduce his subjective expectation of privacy in the parcel he consigned.
 
 
 15
 The second factor, the incriminating nature of the materials shipped, was within the control of Barry and his supplier. They could have taken greater precautions to disguise the shipment. They chose not to. Instead, they shipped a large quantity of pills in clear bottles which were plainly labeled Methaqualone. In addition, the prescription numbers on the labels had been effaced.
 
 
 16
 Id. Thus, we affirmed the denial of the district court's motion to suppress the Methaqualone. Id. at 920.
 
 
 17
 The Barry test guides our decision in this case. The anonymous sender, and Linton by implication, chose United Airlines to transport contraband which inherently diminished both parties' expectation of privacy in the package. And, the perfumed toweling wrapped around the clear plastic package containing the beige powder enhanced the incriminating "appearance" of the package since common carrier employees are trained to suspect that such camouflaging involves contraband. Even if we were to deem the DEA agents' testing of the powder an unlawful seizure after they took it to their San Diego facility, but see United States v. Jacobsen, 466 U.S. 109 (1984), we must conclude that Linton suffered no fourth amendment violation by the agents' actions since she lacked any legitimate expectation of privacy in the contents of the package. Accord United States v. Morgan, 744 F.2d 1215 (6th Cir.1984).
 
 B.
 
 18
 Linton also argues that she was unduly prejudiced by the district court's admission, pursuant to Fed.R.Evid. 404(b), of the drug paraphernalia seized from her home and the Western Union money transfers the DEA obtained via subpoena. She claims that none of the items were related at trial to the conduct for which she was charged, and that the district court thus abused its discretion in denying her Fed.R.Evid. 403 motion to exclude those items. We reject this argument, even though we think the district court incorrectly relied on Fed.R.Evid. 404(b) to admit the evidence in question.
 
 Fed.R.Evid. 404(b) states:
 
 19
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 20
 Contrary to the district court's conclusion, the drug paraphernalia and money transfer documents were not, in a technical sense, evidence of defendant's "other crimes, wrongs, or acts." They were pieces of real evidence having circumstantial probanda regarding the conspiracy for which Linton was charged, tried, and convicted.
 
 Fed.R.Evid. 403 states:
 
 21
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 22
 Whether to admit relevant evidence over defendant's objection that its probative value is substantially outweighed by the danger of unfair prejudice is a matter within the discretion of the trial court. United States v. Zipkin, 729 F.2d 384, 389 (6th Cir.1984).
 
 
 23
 Although the district court erroneously relied on Fed.R.Evid. 404(b) to admit the evidence, the court's ruling in admitting the evidence was not error. The drug paraphernalia and money transfer documents were relevant to the government's claim that Linton was involved in a drug conspiracy. On that basis, they were admissible, see Fed.R.Evid. 402, and the defendant has failed to demonstrate that probative value of the items as tending to prove the existence of a conspiracy were substantially outweighed by any unfair prejudice. We thus conclude that the district court did not abuse its discretion in overruling Linton's Fed.R.Evid. 403 objection.
 
 C.
 
 24
 Linton claims the district court erred in not reducing her base offense level of 24 by 2 because of her "mitigating role" in the criminal conspiracy pursuant to Sec. 3B1.2(b). We reject this argument.
 
 Sec. 3B1.2 of the Guidelines states:
 
 25
 Based on the defendant's role in the offense, decrease the offense level as follows:
 
 
 26
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 
 
 27
 United States Sentencing Commission Guidelines Manual, Sec. 3B1.2 at 3.6 (rev. ed. 1988). Application Note 3 of the Commentary following Sec. 3B1.2(b) explains:
 
 
 28
 For purposes of Sec. 3B1.2, a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.
 
 
 29
 Id. at 3.6. In the "Background" discussion of this provision, the commentators state that a determination as to whether a defendant fits within Sec. 3B1.2(b) "is heavily dependent upon the facts of the particular case." Id. As such, we must determine whether the district court clearly erred in its finding that Linton was not a minor participant in the conspiracy for which she was convicted.
 
 
 30
 The district court refused to find Linton a minor participant in the conspiracy because:
 
 
 31
 With respect to the offense that [Linton and her co-defendant] were charged with, that is, what happened in Lansing, bringing in, picking up this package, the evidence was overwhelming at the trial that the defendants were clearly guilty of what they were charged. And looking just strictly at the events in Lansing, it seems to me that they were, the two of them, both of them, were both major players in what occurred in Lansing.
 
 
 32
 The district court found, in effect, that Linton had not met her burden of proof by a preponderance of the evidence that the Lansing pickup was a small part of some larger California conspiracy. Having reviewed the record, we cannot conclude that the district court was clearly erroneous in so ruling. Linton can point to no evidence on the record of the existence of any larger conspiracy. Nor do we find Linton's sentence to exceed that permitted under the Guidelines.
 
 III.
 
 33
 For the reasons discussed above, we AFFIRM the district court's judgment of conviction and the sentence.