69 F.3d 538
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Timothy HOLLIDAY, Larry Smith and Blake Owens, Defendants-Appellants.
 Nos. 94-5965, 94-5966 and 94-6059.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1995.
 
 Before: SILER and DAUGHTREY, Circuit Judges; ROSEN, District Judge*.
 PER CURIAM.
 
 
 1
 In this consolidated appeal, defendants Timothy Holliday and Blake Owens appeal their jury convictions and sentences for kidnapping and conspiracy to kidnap. Larry Smith appeals his sentence. Numerous issues are raised. For the reasons stated herein, we affirm the convictions and sentences of the defendants.
 
 I. FACTS AND PROCEEDINGS
 A. Factual Background:
 
 2
 Prior to his kidnapping in June, 1992 Robert Evans was employed both legitimately and illegally by Blake Owens. In early 1992, Owens led an organization, called "The Family." Larry Smith, Mark Perryman, Bubba Wilson and Tim Holliday, among others, were members with Evans.
 
 
 3
 In June 1992, Evans left the organization. Owens, upon learning of his defection, instructed Wilson to find Evans and "get him." Subsequently, Evans was found and forcibly taken from his home in Southaven, Mississippi. Holliday forced Evans into a car and when Evans tried to resist, Holliday informed him that he had a gun and began hitting and slapping Evans. He was taken to Owens' club, Studs Playhouse, in Memphis, Tennessee.
 
 
 4
 Upon their arrival at Owens' club, Evans was removed from the car and handcuffed. During the next several hours, Evans was severely beaten by Holliday, Wilson, Smith and the others present. He was forced to disrobe and dance naked upon the stage while masturbating as gang members jeered at him. Holliday and others forced Evans to kiss their penises. Holliday also threatened Evans with anal intercourse while Wilson held a knife to him and threatened to cut off parts of his body.
 
 
 5
 While at the club, Wilson called Owens and advised that they had "gotten" Evans. Owens instructed Wilson to beat Evans. Upon being advised that they had already done so, Owens instructed Wilson to do it again.
 
 
 6
 Evans was then forced to take gang members, including Smith and Holliday, to a home in the Memphis area where they committed a robbery. The purpose of this robbery was to recover items that Wilson believed Evans had taken when he left the gang. The gang members were armed with guns, baseball bats and other weapons during the robbery. Afterwards, Evans was taken to Wilson's home in Mississippi.
 
 
 7
 At Owens' instructions Evans was taken to his house in Memphis. There, Evans was severely beaten with a wooden paddle. This beating ended when Owens broke the paddle while striking Evans with it. Owens and Smith also threatened to use Evans for target practice with a cross-bow.
 
 
 8
 Owens then ordered Evans be taken back to Wilson's house in Mississippi until he "healed up." Owens instructed the members to purchase some epsom salt for Evans' wounds and duct tape to bind him so that he could not escape. Holliday and Smith forced Evans to smoke marijuana until he became physically ill. Holliday also forced Evans to clean Evans' blood from Holliday's shoes. Evans eventually escaped. As a result of his injuries, Evans suffered permanent damage to his jaw and severe bruising all over his body.
 
 B. Procedural Background:
 
 9
 At the first trial, Holliday and Smith were convicted for kidnapping and conspiracy to kidnap under 18 U.S.C. Sec. 1201. The jury was hung on the charges against Owens, but he was convicted on both counts at his retrial. Holliday was sentenced to 150 months, Smith to 93 months, and Owens to 15 years on each count to run concurrently.
 
 II. SUFFICIENCY OF THE EVIDENCE
 
 10
 "On appeal, the standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989) (citation omitted). As there was sufficient evidence to support the convictions of Owens and Holliday, the district court properly denied their motions for judgment of acquittal.
 
 A. Defendant Owens:
 
 11
 Owens contends that there was insufficient evidence that he was involved or participated in the conspiracy to kidnap Evans and the subsequent physical abuse. He was deeply involved in the kidnapping and physical abuse from its inception. In fact, there was substantial evidence that he was in control of the criminal conduct during the entire period. Owens cites to testimony which, if viewed alone, would tend to show that he was not involved in the kidnapping. However, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " Wright v. West, 112 S.Ct. 2482, 2492-93 (1992) (citation omitted).
 
 
 12
 Owens also infers the testimony from the co-defendants and the victim is less credible than that from his witnesses. However, "[t]he issue of credibility, the demeanor of the parties, and the weighing of the evidence were properly for the jury." Brown v. Davis, 752 F.2d 1142, 1147 (6th Cir.1985).
 
 B. Defendant Holliday:
 
 13
 Holliday claims that his actions were not those of a conspirator since he was not present during all of the events. "A trier of fact may infer knowledge of and participation in a common purpose and plan of a conspiracy based on defendant's actions and reactions to the circumstances." United States v. Barrett, 933 F.2d 355, 359 (6th Cir.1991). The record reveals that Holliday, even though not present for every occurrence, was deeply involved in the kidnapping and subsequent acts of physical and sexual abuse. In fact, the evidence shows that Holliday appeared to enjoy his part in the crimes.
 
 
 14
 Holliday also claims the testimony from the victim is less credible than that of his witnesses, but that was for the jury to resolve. Brown, 752 F.2d at 1147.
 
 III. EVIDENCE OF OTHER ACTS
 
 15
 Owens contends that the district court erred by allowing introduction of testimony during his trial regarding prior acts of theft, threats, and beatings, in which he participated or directed. Federal Rule of Evidence "404(b) 'is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified.' ... Moreover, '[t]he list of permissible uses of evidence of other crimes or acts set forth in Rule 404(b) is neither exhaustive nor conclusive.' " United States v. Acosta-Cazares, 878 F.2d 945, 948 (6th Cir.), cert. denied, 493 U.S. 899 (1989) (citations omitted).
 
 
 16
 "The trial court's determinations of admissibility and relevancy depend on the exercise of sound judgment within the context of the entire trial.... The trial court's determination should not be disturbed absent a clear abuse of discretion." United States v. Seago, 930 F.2d 482, 494 (6th Cir.1991).
 
 
 17
 Prior to the admission of the evidence, the trial court conducted a hearing outside the presence of the jury. The court reviewed the specific evidence proffered by the government and found it would serve a permissible purpose and its probative value, except evidence relating to a fire bombing and a murder, outweighed its prejudicial value. Thus, all evidence was admitted with those two exceptions. The district court then gave appropriate limiting instructions prior to the presentation of the evidence and when jury instructions were given.
 
 
 18
 The trial court did not abuse its discretion in allowing the admission of the evidence to show that Owens was the director of the criminal enterprise, that he exercised control over the enterprise, and that this resulted in the kidnapping and beatings of Evans.
 
 IV. EVIDENCE OF THE ROBBERY
 
 19
 Holliday argues that admission of the evidence of the robbery which occurred between the beating at Owens' club and the beating at Owens' house was an abuse of discretion. In support, he contends that there was no evidence that he was present or participated in the planning or execution of the robbery and the admission of the evidence severely prejudiced his case.
 
 
 20
 "[T]he admission of relevant potentially prejudicial evidence is placed within the sound discretion of the trial court." United States v. Zipkin, 729 F.2d 384, 389 (6th Cir.1984). The court must weigh the probative value of the evidence against its prejudicial value. To determine whether a clear abuse of discretion has occurred, this court "must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.... [T]he draftsmen intended that the trial judge be given very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise ...". Id. at 389-90 (citation omitted).
 
 
 21
 Prior to the admission of the evidence, the district court gave the jury an appropriate limiting instruction. This instruction was repeated by the district court several other times throughout the trial. During the trial, the government repeatedly stressed that Holliday was not present during the course of this robbery.
 
 
 22
 This evidence was relevant and probative to show the mode of operation and the conspiracy and kidnapping themselves. When viewed "in the light most favorable to [the government], maximizing its probative value and minimizing its prejudicial effect," id. at 389, the trial court did not abuse its discretion by allowing the admission of this evidence.
 
 V. SENTENCE
 
 23
 Finally, all three defendants claim that the district court incorrectly applied the sentencing guidelines. These claims are without merit. The district court's findings of fact were not clearly erroneous, and its legal conclusions were correct.
 
 
 24
 "It is well established that findings of fact crucial to the determination of a defendant's offense level and criminal history category need only be supported by a preponderance of the evidence; the government need not establish the facts beyond a reasonable doubt." United States v. Rutledge, 33 F.3d 671, 673 (6th Cir.1994) (citations omitted). The reviewing court is required to "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. Sec. 3742(e). Thus, the district court's findings of fact may be set aside only if they are clearly erroneous and "to be clearly erroneous, ..., a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old unrefrigerated dead fish." United States v. Perry, 908 F.2d 56, 58 (6th Cir.), cert. denied, 498 U.S. 1002 (1990) (citations omitted). The district court's interpretation of the law is subject to de novo review. Id.
 
 A. Defendant Owens:
 
 25
 As Owens was convicted of a violation of 18 U.S.C. Sec. 1201(a)(1)(C) (kidnapping/abduction and unlawful restraint), his base offense level was 24. He contends that the evidence supports a mitigating profile of his conduct allowing for a deduction pursuant to Sec. 2X3.1 of the Guidelines as an accessory after the fact. In support, Owens again argues that the proof at trial "conclusively" shows, at most, his involvement only began after the initial abduction and abuse which occurred at his club.
 
 
 26
 As discussed earlier, the record, viewed in its entirety, reveals more than substantial evidence that Owens was in control as the leader of the participants during the entire criminal episode. The district court determination of the base offense level was not clear error.
 
 
 27
 Second, Owens claims the district court erroneously enhanced his sentence for "serious bodily injury" to the victim pursuant to Sec. 2A4.1(2)(B)[1]. He first supports this claim with his lack of knowledge and/or participation defense. This claim is not persuasive in light of the substantial evidence to the contrary. He also attempts to support this claim by asserting that all of Evans' injuries occurred prior to his arrival at Owens' home. This claim too, is unpersuasive in light of the substantial evidence to the contrary. There was substantial evidence that after the beating with the wooden paddle, severe bruising was present.
 
 
 28
 Third, Owens argues that the district court erred when it increased his base offense level by two levels for use of a dangerous weapon pursuant to Sec. 2A4.1(b). A dangerous weapon is "an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon." USSG Sec. 1B1.1 (n. 1(d)). The two-level enhancement was appropriate given the substantial evidence of gang members' possession of weapons of various kinds throughout the entire episode. Further, the wooden paddle was a dangerous weapon as used by Owens and the others.
 
 
 29
 Fourth, Owens argues the district court erroneously enhanced his offense level by four levels for being a leader or organizer under Sec. 3B1.1 of the Guidelines. A defendant's offense level is increased by four levels if the district court determines that he is "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG Sec. 3B1.1. A participant is "a person criminally responsible for the commission of the offense, but need not have been convicted." USSG Sec. 3B1.1 (n. 1). The defendant may be counted as one of the five participants. United States v. Carson, 9 F.3d 576, 584 (7th Cir.1993), cert. denied, 115 S.Ct. 135 (1994).
 
 
 30
 "A defendant receiving a 'leader or organizer' enhancement under Sec. 3B1.1(a) must have some control, direct or indirect, over at least four other participants in the offense." Id. The defendant need not maintain direct control of the co-conspirators at all times. United States v. Paulino, 935 F.2d 739, 758 (6th Cir.), cert. denied, 502 U.S. 914 (1991). The defendant may remain in the background while the co-conspirator does the "dirty work" as long as the defendant is the one giving the orders. United States v. Camargo, 908 F.2d 179, 185 (7th Cir.1990).
 
 
 31
 The district court found six participants other than Owens. While Owens may not have been present during the entire episode, there was substantial evidence that he was in contact with the other participants, either by phone or in person, at all times and he was in "direct control" of the other participants.
 
 
 32
 Finally, Owens contends that the district court erred by increasing his offense level by two levels for obstruction of justice pursuant to Sec. 3C1.1 of the Guidelines. In support, Owens claims that such an enhancement based upon the jury's rejection of his testimony violates his right to due process. This court has specifically rejected the argument that an enhancement for obstruction of justice based upon the defendant's untruthful testimony violates the defendant's constitutional rights. United States v. Medina, 992 F.2d 573 (6th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994). A defendant does not have a constitutional right to be protected from an enhanced sentence once he commits perjury on the stand. Id. at 591. The district court found that Owens had purposefully testified falsely.
 
 B. Defendant Holliday:
 
 33
 First, Holliday argues that the district court erroneously enhanced his sentence two levels for use of a dangerous weapon pursuant to Sec. 2A4.1(b)(3) of the Guidelines. The record is replete with evidence that throughout the entire criminal episode there were guns, knives, bats and clubs in the possession of the co-conspirators. Holliday was in possession of a gun while at Owens' club. Further, Holliday aided and encouraged Wilson when he threatened Evans with a knife. More than a preponderance of evidence supports the district court's enhancement for use of a dangerous weapon.
 
 
 34
 Second, Holliday argues that the district court erroneously enhanced his sentence three levels pursuant to Sec. 2A4.1(b)(5) of the Guidelines for the "sexual exploitation" of the victim. Holliday contends that there was insufficient evidence that any such acts occurred and even if they did occur, they do not constitute "sexual exploitation." There was overwhelming evidence that Holliday and others forced Evans to commit sexual acts.
 
 
 35
 Application Note 4 to Sec. 2A4.1(b)(5) provides that " 'sexually exploited' includes offenses set forth in 18 U.S.C. Secs. 2241-2244[2]...." These statutes prohibit forcing another person to engage in a "sexual act." The term "sexual act" is defined in 18 U.S.C. Sec. 2245 as "contact between the mouth and penis,...." 18 U.S.C. Sec. 2245(2)(B). Clearly, Evans engaged in "sexual acts" because Holliday subjected him to force and threats of force.
 
 
 36
 Finally, Holliday argues that he was entitled to a two to four-level reduction because he was a minor or minimal participant in the offense. Pursuant to Application Note 1 to Sec. 3B1.2 a "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." A minor participant's role is less than that of most of the other participants but more than a minimal participant's. USSG Sec. 3B1.2 (n. 3).
 
 
 37
 Holliday was involved in the kidnapping and physical abuse from its inception. He was a main participant. He beat Evans extensively. In fact, there was testimony that during one beating episode, Holliday repeatedly hit Evans harder and harder because he was angry that he could not knock Evans unconscious. Holliday sexually abused Evans and encouraged others to do so. These were not the acts of a minor or minimal participant.
 
 C. Defendant Smith:
 
 38
 Smith's only claim is that the district court erroneously assessed a two-level enhancement for use of a dangerous weapon pursuant to Sec. 2A4.1(b)(3).
 
 
 39
 The overwhelming evidence was that the majority of the co-conspirators, including Smith, possessed dangerous weapons throughout the entire criminal episode. Smith was present when Evans was threatened with the gun at the club and beaten. Smith was a participant in the beating of Evans at Owens' house with the wooden paddle from which Evans incurred additional serious physical injury.
 
 
 40
 Based upon the foregoing, the convictions and sentences of Timothy Holliday, Larry Smith and Blake Owens are AFFIRMED.
 
 
 
 *
 Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 "Serious bodily injury" is defined as "any significant injury, e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG Sec. 1B1.1 (n. 1(b))
 
 
 [2]
 Although 18 U.S.C. Secs. 2241-2244 have since been repealed and replaced, those statutes were in effect at the time of the offense and thus apply