**Elizabeth SHAHID, Personal Representative of Estate of James Braxton, Plaintiff–Appellant,**

v.

**CITY OF DETROIT, James O'Connor, Ralph Wilkowitz, Joseph Schmidt, George Blakey, Individually in their representative capacities as Police Officers for the City of Detroit, jointly and severally, Defendants–Appellees.**

Nos. 88–1628, 88–1335.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 14, 1989.

Decided Nov. 22, 1989.

James C. Howarth (argued), Fried, Saperstein, DeVine & Kohn and Craig E. Zucker, Southfield, Mich., for plaintiff-appellant.

Marion Jenkins (argued), Law Dept., City of Detroit, Detroit, Mich., for defendants-appellees.

Before JONES and MILBURN, Circuit Judges, and BELL, District Judge.[*]

SAM H. BELL, District Judge.

The death of James Braxton on September 9, 1984 in a Detroit jail gave birth to the litigation resulting in the instant appeal. Plaintiff Elizabeth Shahid, appellant here, was appointed to represent the estate of Mr. Braxton. She contends that the court below committed prejudicial error in two evidentiary rulings during the trial proceedings. The trial jury resolved the case in favor of all defendants.

Appellant further states that the trial judge erred in denying a new trial in her case against the City of Detroit, James O'Connor, Ralph Wilkowitz, Joseph Schmidt, and George Blakey, individually and in their representative capacities as police officers for the City of Detroit, jointly and severally. The basis of this assignment of error is that the verdict was against the greater weight of the evidence.

Plaintiff alleged four claims against the defendants arising out of James Braxton's (Braxton) death on September 9, 1984. Count I was a 42 U.S.C. § 1983 allegation that defendants acting under the color of law, deprived Braxton of his federal and state constitutional rights—the right to be free from unreasonable search and seizure, the due process right to life and liberty, the right not to be punished without due process of law, and the right to adequate medical attention. In Count II plaintiff claimed that the City of Detroit maintained a policy or custom of deliberate indifference to adequate training of law enforcement personnel which made inevitable the

---

[*] Honorable Samuel H. Bell, United States District Judge for the Northern District of Ohio, sitting by designation.

injuries suffered by the decedent. Count III raised a state law claim of negligence which proximately caused Braxton's death. Finally, in Count IV plaintiff claimed that the City of Detroit maintained a dangerous and defective building at the 16th precinct because it contained no detoxification cell and that that contributed to Braxton's death.

The court granted a directed verdict in favor of defendant Wilkowitz on all charges brought against him, and the jury returned verdicts of no cause of action in favor of all remaining defendants. A motion for new trial was filed and denied by the trial court.

## STATEMENT OF FACTS

We begin our discussion by reviewing the facts addressed during the course of trial. Braxton was arrested on Friday, September 7, 1984, for driving under the influence of alcohol, in Oakland County, Michigan. He remained in Oakland County's custody until the early afternoon of the next day. At that time he was turned over to the Detroit Police Department on a minor misdemeanor warrant. He did not appear to be ill or intoxicated. He arrived at the 16th precinct and was turned over to the doorman at about 4:00 P.M. He spent an uneventful night, engaging in normal conversation with a fellow prisoner. However, early Sunday morning, Braxton began to cry out for help. His voice was heard by other prisoners in the area. Evidence was introduced that one of the officers went in and talked to him, calmed him down and took the shirt that Braxton had taken off. The officer, defendant Schmidt, testified that Braxton told him that the cell was too small and asked to be let out. Evidence, although disputed, was introduced that decedent resumed screaming soon after the officer left. Both fellow prisoners testified that around noon they saw Braxton lying on the floor of his cell. Shortly after that hour, Officer Wilkowitz checked decedent's pulse and found none; EMS was called and Braxton was declared dead. An autopsy was performed and Dr. Russanow, M.D., the pathologist, found

that death was caused by a seizure disorder of unknown etiology.

Plaintiff's theory at trial was that the decedent, a known alcoholic, suffered from delirium tremens, a condition caused by abrupt alcohol withdrawal, which is easily treatable medically. Plaintiff contended that defendants should have recognized the condition and that they should have secured medical treatment for Braxton. In this context, plaintiff introduced evidence from a neurologist, who stated, among other things, that Braxton would have survived had he received appropriate and timely medical attention.

As indicated heretofore, plaintiff-appellant raises three issues on appeal. In addition to her claim that the trial court erred in denying her motion for a new trial because the verdict was against the greater weight of the evidence, she raises two evidentiary assignments of error. First, appellant claims that the court erred in excluding from evidence certain photographs taken of the deceased in the jail cell where he died. Second, she contends that the trial court erred by failing to allow plaintiff's expert witness to render opinion testimony that the individual police officers were guilty of negligence resulting in decedent's death.

## I.

█ The three black and white photographs which the trial court would not allow into evidence were taken at the precinct, after EMS established that Braxton was dead. One of the photographs shows the cell bars with the door open or partially open; a portion of decedent's body can be seen. The second photograph is a closer shot, showing the decedent's back through the open cell door. The third photograph shows the decedent lying on the floor, on his side, in a quasi-fetal position. This photograph shows his face from the side with some bloody discharge coming from his mouth. The third photograph also shows bruises on the decedent's arm and grayish paint marks on his left hand. Four other photographs showing the cell itself were admitted into evidence.

The record indicates that defendants raised an objection under Rule 403 of the Federal Rules of Evidence, claiming that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice, but the record further indicates that the court did not rule on that objection. The trial transcript shows that the district judge excluded the photographs because she determined that they might not be accurate representations of what the officers would have seen, or could have seen prior to Braxton's death. The court stated that while alive, decedent was moving and changing positions. Furthermore, the court reasoned, there was no evidence to suggest that there was a bloody discharge from Braxton's mouth while alive, and, thus, it could have been the result of death. Nor was there evidence to establish whether or not Braxton was arrested with the bruises already on his body. The court also stated that these photographs were cumulative since there was testimony from defendant officers concerning what they saw while Braxton was alive. Although defendant O'Connor said that he saw what was depicted in the photographs, he also stated that he was 10 to 15 feet away and that he never saw the decedent bleeding. Joint Exhibit 349. The district court found that this testimony was insufficient to authenticate and establish that the photographs correctly depicted what the officers would have seen *while the decedent was alive.*

Plaintiff's counsel expressly indicated to the court that his purpose in introducing the photos was to show the jury that: "Braxton, if he had been looked at carefully, would have been seen to be . . . bruised, what appears to be blood coming from his mouth." Joint Exhibit 360. Counsel for defendant, out of the presence of the jury, gave the court information that the body had been moved before the photographs were taken. This information was never placed into evidence. The court noted that "there's a strong suggestion they could be prejudicial" but withheld ruling on that aspect of possible admissibility. Joint Exhibit 367.

In general:

Photographs are admissible as long as what they purport to depict is relevant to the issues and substantial identity to relevant times and conditions is established. *United States v. Daniels,* 377 F.2d 255, 258 (6th Cir.1967). In 1968 this circuit again addressed the issue in *United States v. Hobbs,* 403 F.2d 977, 978 (6th Cir.1968). There we stated:

The judicial test . . . [is] whether the proffered photograph is an accurate representation of the scene depicted.

Thus, the test of admissibility of the photographs in issue is whether the photographs accurately depicted the scene, including the position of the decedent, at the time the photographs were taken. The photographs can only be offered and received into evidence for the purpose of indicating to the jury what they depicted at that time. If it is determined that the photographs are accurate representations of what they depict, the question then becomes whether they are relevant.

The photographs' relevance here relates to two salient facets of plaintiff's proof. First, did the body contain marks, bruises or paint dustings which would give truth to the assertion that decedent had, in the minutes before his death, sought assistance from the defendant officers? Did he bruise himself while calling their attention to his problems; did the paint on his hands indicate prolonged clutching at the cell bars? Secondly, do the photographs suggest that decedent's bruises or the traces of blood near his mouth constituted some evidence of the fact that his injuries were so obvious before his demise that defendant's attention should have been called to plaintiff's condition as he lay on the cell floor? The simple fact that the body may have been moved or relocated before the photos were taken does not preclude their admission. The trial jury had the right to consider such evidence of decedent's physical appearance as opposed to his physical position and to draw therefrom those reasonable inferences as are generally allowed in the province of finders of fact.

Furthermore, as previously mentioned, the defendants objected to the admission of the photographs on the basis of Rule 403 of the Federal Rules of Evidence. The record shows that the court did not rule on that objection. Just as we determine that these photographs have high probative value, we also hold that their probative value is not outweighed by any possible prejudice. Thus a Rule 403 objection is not meritorious under the circumstances.

■ Therefore, we conclude that exclusion of the photographs was prejudicial error.

## II.

■ Plaintiff's second assignment of error relates to the district court's ruling that plaintiff's expert, Dr. Erik Beckman, who testified by videotape, was not permitted to express his opinion regarding an ultimate issue in this case—the defendant officers' alleged negligence. The trial court excluded the testimony because it was based on assumptions not in evidence, but rather assumptions based on plaintiff's version of events. The trial judge correctly stated that it was the jury's province to determine disputed facts, such as whether the officers made the required inspection every half hour and whether the decedent screamed and banged the doors for hours. It was the jury's prerogative to decide those issues based upon the credibility of the testimony. Therefore, when plaintiff's counsel asked the expert to state his opinion concerning the officers' *negligence* based on the assumption that the officers did not make the inspection at the proper intervals and that decedent acted in a certain manner—the court found that such opinion is not "otherwise admissible" under Rule 704 of the Federal Rules of Evidence. The district court did not exclude the testimony because it related to the ultimate issue in the case, but because the court determined that it would prejudicially confuse the jury to hear an expert witness base his opinion of the ultimate issue on facts that were for the jury to determine. The trial judge stated that:

See, what we have is the witness stating there's not any indication that cell checks were made every half hour and it's for the jury to decide, based on what they heard, whether they were making cell checks. We have witnesses who have said they were. I can't let this expert make the statement [that] this didn't happen or [that they] weren't doing it. This jury has to decide that.

(IV, 28) Joint Appendix No. 392.

[During the deposition, the expert] accepted the facts as you [Plaintiff] gave it to him, he was not seated here hearing live testimony. What he's relying on is not supported by the testimony. At least it's in conflict as the jury heard the testimony in the case. If you were asking these questions at this time there would be objections in terms of foundation or assumes a fact not in evidence, and I would have to sustain that objection, so we have a problem with this testimony.

(IV, 30–31) also Joint Appendix No. 394.

Thus, because of the foundational flaw, the trial court excluded the opinion testimony. We find that there was no error in this ruling. Furthermore, the transcript clearly shows that the district court carefully reviewed the deposition and took extra time and effort to resolve the objections and still save as much as possible of the expert's testimony. As a result, the jury heard the expert's opinion regarding the types of training the police should have had; the basis of the expert's opinions; the facts of this case as he understood them; his comments regarding the necessity and lack of a screening form; and what the defendant officers should have seen and how they should have responded. Moreover, it is interesting to note that the court allowed Dr. Sakellares, plaintiff's medical expert, to express his opinion as to the ultimate issue in this case without any problem.

■ An additional reason for our view on this issue is the fact that the expert's opinion as to the ultimate issue here amounts to a "legal conclusion." In the testimony excluded by the trial court, the expert would state to the jury that certain behavior by defendant officers amounts to negligence under the law. This court has said:

Federal Rule of Evidence 704 permits a witness to testify in the form of an opinion or inference to an "ultimate issue to be decided by the trier of fact." However, "[i]t is not for the witness to instruct the jury as to applicable principles of law, but for the judge." *Marx & Co. Inc. v. Diner's Club,* 550 F.2d 505, 509–10 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

*United States v. Zipkin,* 729 F.2d 384, 387 (6th Cir.1984). In *Zipkin* this court found that allowing introduction of testimony by a bankruptcy judge testifying as an expert regarding "matters of law" was a prejudicial error. The *Zipkin* court cited with approval *Stoler v. Penn Central Transportation,* 583 F.2d 896 (6th Cir.1978), for the proposition that:

> [It is] no abuse of discretion to prohibit expert witness from testifying that he believed crossing was "extrahazardous" since the expert was being asked for what amounted to a legal opinion.

*United States v. Zipkin,* 729 F.2d at 387. *See also, Payne v. A. O. Smith Corp.,* 627 F.Supp. 226 (S.D.Ohio 1985). For all of the reasons stated, we conclude that it was not an abuse of discretion for the court to exclude the testimony at issue in this assignment.

### III.

In her third assignment of error, plaintiff claims that the trial court erred in failing to grant plaintiff's motion for a new trial on the basis that the verdict was against the great weight of the evidence.

In view of our finding that the district court committed prejudicial error in excluding the three photographs of the decedent the evidentiary posture of this entire case is altered. Thus, we need not reach this issue now.

Accordingly, the judgment of the trial court is reversed and the cause remanded to the district court for further proceedings in accordance with this opinion.