983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David BURGESS and Billy White, Defendants-Appellants.
 Nos. 90-6187, 90-6329 and 90-6346.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1992.
 
 1
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and HOLSCHUH, District Judge.*
 
 
 2
 HOLSCHUH, District Judge.
 
 
 3
 Following a jury trial, Defendant-appellant David Burgess was convicted of conspiring to possess marijuana with the intent to distribute it and of carrying a firearm during and in relation to a drug trafficking crime. Defendant-appellant Billy White, a co-defendant, pleaded guilty to the conspiracy count and was convicted by the jury of the firearm offense. Both Burgess and White appeal their convictions, and White also appeals the sentence he received on the conspiracy count. For the reasons discussed below, we affirm White's conviction and sentence and reverse Burgess' convictions.
 
 I.
 
 4
 The facts of this case are easily summarized. Sometime in April, 1990, John Rose, a DEA informant, learned that an acquaintance, David Muncy, was interested in purchasing some marijuana. Rose so advised Task Force Officer Harold Winings, and, after a series of tape-recorded telephone calls, Rose and Winings arranged to meet Muncy on May 21, 1990 at a Jerry's Restaurant located just off Interstate 75 near Lexington, Kentucky, to make the sale.
 
 
 5
 Muncy arrived at the restaurant first, accompanied by White and Burgess. White, who, like Burgess, is from Pikeville, Kentucky, had driven his car, with Burgess as a passenger, to pick up Muncy in Hyden, Kentucky, and the three then travelled together to Lexington. When Rose and Winings arrived at the prearranged location, Muncy came over to Rose's car to talk with him. Subsequently, he went back to White's car and then returned to Rose's car with White. Winings and White discussed the amount of marijuana to be sold, and White showed Winings $10,000 which was part of the purchase price. Almost immediately thereafter, police officers arrested defendants Muncy, White and Burgess. According to all of the witnesses who testified, Burgess did not move from his position in the middle of the front seat of White's car during the entire time that these events took place.
 
 
 6
 After the defendants were arrested, White's car was searched. A blue bank bag containing an additional $15,000.00 in cash was found on the driver's (White's) side of the front seat. A set of triple-beam scales was found in the trunk. Finally, a loaded .38 caliber Omega revolver was found in the space separating the two sections of the car's front seat. The gun was sufficiently hidden so that it could not be seen by someone outside the vehicle. There was conflicting testimony as to its visibility to front seat passengers other than Burgess, who was seated more or less on top of it. The government introduced no evidence as to ownership of the revolver. White and Muncy denied owning the gun or knowing it was in the car. Burgess did not testify.
 
 
 7
 All three defendants were indicted for conspiracy to possess marijuana with the intent to distribute it and for carrying a firearm during and in relation to a drug trafficking crime. At trial, Burgess' timely motions for judgment of acquittal for lack of evidence tying him to the conspiracy were denied. White had previously pleaded guilty to the conspiracy count; the jury convicted both Burgess and Muncy on that count, convicted White and Burgess of the firearm charge, and found Muncy not guilty of that offense. The trial court sentenced White to a term of imprisonment of 21 months on the conspiracy count, denying him any reduction based on acceptance of responsibility even though he had pleaded guilty to the conspiracy count, and to a mandatory consecutive 60-month term for the firearm conviction under 18 U.S.C. § 924(c). Burgess received an identical sentence after his motion for a new trial on grounds of newly-discovered evidence was denied. White and Burgess now appeal various aspects of the trial court's judgment and sentence.
 
 II.
 
 8
 White's appeal encompasses five issues: one is jurisdictional in nature, two attack evidentiary rulings made during the trial, one involves an alleged inconsistency in the jury's verdicts, and the last concerns his sentence. First, White asserts that his conviction is constitutionally invalid because the federal government is powerless to punish persons who attempt to purchase "nonexistent fictional marijuana." Second, he argues that the trial court erred in admitting into evidence a photograph of the gun positioned between the seats of his car when Officer Winings testified that the picture did not correctly reflect the way the gun was actually positioned. Third, White contends that Officer Winings was erroneously allowed to state his view of each defendant's role in the drug transaction. Fourth, he claims that the jury's decision to acquit Muncy on the firearm count is inconsistent with his conviction on that charge. Last, he claims that he was improperly denied a two-point reduction for accepting responsibility for his role in the drug conspiracy.
 
 
 9
 Burgess' appeal raises two issues. First, he contends that the trial court erred in failing to grant his motion for a judgment of acquittal, premised upon the absence of any evidence linking him to the conspiracy in which White and Muncy were involved. Second, he asserts that the trial court erred in failing to grant him a new trial based on newly discovered evidence, consisting of a police officer's post-trial realization that Burgess may have been accompanying White in order to provide evidence against White to law enforcement officials. We discuss each of these issues in turn.
 
 III.
 
 10
 A. Jurisdiction to Prosecute Drug Trafficking.
 
 
 11
 White argues that his convictions cannot stand because there were no actual drugs involved in this case, and therefore his attempted purchase had no effect on interstate commerce. White also argues that 18 U.S.C. § 924(c) violates the Commerce Clause and the Tenth Amendment. These arguments plainly lack merit.
 
 
 12
 In United States v. Sawyers, 902 F.2d 1217 (6th Cir.1990), cert. denied, 111 S.Ct. 2895 (1991), this Court held that no relation to interstate commerce need be shown to sustain a conviction under 21 U.S.C. § 841(a)(1). Id. at 1221 (quoting United States v. Scales, 464 F.2d 371, 373 (6th Cir.1972)). The same reasoning would apply to a conviction of conspiracy under 21 U.S.C. § 846, and White cites no authority for the proposition that a conviction under section 846 requires proof of an effect on interstate commerce. Further, this Court has repeatedly held that a controlled substance need not be present during a drug transaction, so long as the defendant subjectively believes that a controlled substance is involved, to sustain a conviction under section 846 for attempt or conspiracy. See, e.g., United States v. Reeves, 794 F.2d 1101, 1103 n. 2 (6th Cir.), cert. denied, 479 U.S. 963 (1986); United States v. Pennell, 737 F.2d 521, 524-26 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985). Finally, White's attack on section 924(c) is foreclosed by the decision in United States v. Dumas, 934 F.2d 1387 (6th Cir.), cert. denied, 111 S.Ct. 2034 (1991), which held that section 924(c) "is a valid measure designed to deter the violence associated with drug trafficking, an activity validly regulated by Congress under the Commerce Clause," and does not violate the reserved powers clause of the tenth amendment. Id. at 1390.
 
 
 13
 B. Admission of Photographs.
 
 
 14
 White next argues that the trial court erroneously admitted two photographs taken the day after the drug transaction which purported to show the location of the revolver in White's car at the time of the transaction. The revolver, which had been removed from the vehicle during the arrest, was put back in between the front seats of the vehicle the next day and photographed. Two such photographs were offered. Officer Winings testified that one, Government's Exhibit 15, accurately reflected the location of the gun on the date of the offense, but that the other, Government's Exhibit 15-A, showed the butt of the gun sticking up too far. Despite this testimony, and over objection, both photographs were admitted into evidence. White contends that the "photographs" should have been excluded under Fed.R.Evid. 403 because, being inaccurate depictions of the gun's position at the time of the offense, they created the potential of misleading the jury. We assume White's objection went only to the admission of Government's Exhibit 15-A.
 
 
 15
 The government argues that White objected to this exhibit at trial based on lack of foundation, and cannot now advance an objection based on Rule 403. See Fed.R.Evid. 103(a)(1). However, White's objection was clearly based on relevancy rather than lack of foundation. Officer Ratliff, who took the photograph, was called as a witness and identified it. White objected because the picture concededly did not accurately depict the gun's position when police officers first observed it and was thus irrelevant to the issues raised by the firearm charge.
 
 
 16
 The initial test for admissibility of photographs is whether the photographs accurately depicted the scene at the time the photographs were taken. Shahid v. City of Detroit, 889 F.2d 1543, 1546 (6th Cir.1989). "If it is determined that the photographs are accurate representations of what they depict, the question then becomes whether they are relevant." Id. at 1546. With respect to Government's Exhibit 15-A, the problem is not whether it accurately depicted the location of the gun at the time the photograph was taken; this was easily established by Officer Ratliff who took the photograph, was called as a witness and identified it. The problem arose because the photograph, according to Officer Winings' own testimony, did not accurately show the position of the gun at the time of the alleged offense in question and thus was not relevant to the issues concerning the firearm charge. Consequently, the photograph should not have been admitted as relevant evidence under Fed.R.Evid. 401.
 
 
 17
 We conclude, however, that under the particular facts of this case, the error was harmless. The testimony of Officer Winings and Officer Ratliff, who took the pictures, was clear concerning the actual positioning of the gun and the inaccuracy of Government's Exhibit 15-A. The gun, at the time of the alleged offense, was described as having been "flush" between the two seats and perhaps hidden from the view of even the front seat passengers. The jury had before it Government's Exhibit 15, which showed the gun in its original position. No rational jury could have concluded that both photos were accurate, and there is no likelihood that the defendant was unfairly prejudiced by the admission of Government's Exhibit 15-A. Consequently, this error does not require reversal.
 
 
 18
 C. Lay Opinion Regarding Role of Coconspirator.
 
 
 19
 White next contends that the trial court erroneously allowed Officer Winings to testify that in his opinion Burgess' role in the drug deal was to "guard the money and oversee the deal and make sure nothing went wrong." (R. 88.) White argues that Winings' opinion was inadmissible under Rule 701 because it necessarily encompassed a legal conclusion and was not helpful to the trier of fact, and that it was prejudicial to him because Burgess was described as White's friend, and the two of them were together in the car before Muncy was picked up.
 
 
 20
 Although the trial court had discretion to allow Officer Winings to state an opinion based upon his perception of defendants' activities, see United States v. Graham, 856 F.2d 756, 759 (6th Cir.1988), cert. denied, 489 U.S. 1022 (1989), that opinion was required to be rationally based on his perception and helpful to a clear understanding of the determination of a fact in issue. Fed.R.Evid. 701. Even assuming that Winings was testifying as an expert, the overriding limitation under both Rules 701 and 702 is the requirement that the opinion be helpful to the trier of fact. United States v. Theodoropoulos, 866 F.2d 587, 591 (3d Cir.), mandamus denied, 489 U.S. 1009 (1989). Counsel for the government conceded at oral argument that Winings' testimony was unnecessary to help the jury in this case, but argued that his testimony was not prejudicial because it simply restated the government's theory of the case.
 
 
 21
 We agree with White that the trial court erred in allowing Winings to restate the government's theory of the case in the form of his opinion. A police officer clearly should not be permitted to state his opinion that a defendant was a coconspirator with other defendants on trial. There is no significant difference in allowing the police officer to state his opinion that a defendant's role in the charged conspiracy was to serve as a lookout and guard the money for his alleged coconspirators. The jury was certainly capable of making a determination of Burgess' participation or non-participation in the charged conspiracy based on admissible evidence presented to it, and Officer Winings' opinion was neither necessary nor helpful to the jury in arriving at this determination. Although that opinion should have been excluded, in the context of White's conviction, the error was harmless. The opinion concerned Burgess' role in the charged conspiracy, and while it may indirectly have implicated White in the conspiracy, the important point is that White had already pleaded guilty to the conspiracy count and was standing trial only on the firearm count. With respect to the firearm count, there was ample evidence to support White's conviction on this charge apart from Officer Winings' opinion concerning Burgess. Under the facts of this case, White was the owner and driver of the car in which the handgun was found. The gun was in close proximity to the $15,000 cash which, by White's admission, was to be used for the drug deal. White had another $10,000 on his person. Thus, there was ample evidence apart from Wining's testimony to support the jury's conclusion that White brought the gun along to protect himself and the money. THis Court has previously held this type of evidence sufficient to support a conviction under § 924(c). See United States v. Blankenship, 954 F.2d 1224, 1229 (6th Cir.), cert. denied, --- U.S. ---- (1992). Consequently, White is not entitled to a reversal on this issue.
 
 
 22
 D. Inconsistent Verdicts.
 
 
 23
 White argues that the jury returned inconsistent verdicts in acquitting Muncy of the firearm count while convicting White based upon identical evidence. This argument is meritless.
 
 
 24
 The short answer to White's inconsistent verdict argument is that "the Supreme Court has repeatedly held that a jury may announce logically inconsistent verdicts in a criminal case." United States v. Clemmer, 918 F.2d 570, 573 (6th Cir.1990). In Clemmer, citing to Dunn v. United States, 284 U.S. 390 (1932) and United States v. Powell, 469 U.S. 57 (1984), this Court noted that any number of reasons may explain a jury's decision to reach inconsistent verdicts, and that the Supreme Court has therefore adopted a "policy [which] prevents judges from looking into the motivations behind jury verdicts." Ibid; see also United States v. Frazier, 880 F.2d 878, 882-83 (6th Cir.1989), cert. denied, 493 U.S. 1083 (1990) (noting that "it would be unworkable to review inconsistent verdicts on an individualized basis" and that, in order to protect the defendant from being wrongfully convicted, the Court simply reviews each count independently for sufficiency of the evidence). The only arguably contrary decision cited by White, American Socialist Society v. United States, 266 F. 212 (2d Cir.), cert. denied, 254 U.S. 637 (1920), is regarded by the court which issued it as both "not at all clear" and unlikely to be good law in light of the Supreme Court's later decisions in Dunn and Powell. United States v. Alvarado, 882 F.2d 645, 654-55 (2d Cir.1989), cert. denied, 493 U.S. 1071 (1990).
 
 
 25
 Even if White's position on this issue had some basis in decisional law, it is factually unsupportable. White, not Muncy, owned the car in which the gun was found and was in the car prior to the time Muncy entered it. The jury could easily have inferred that White concealed the weapon between the front seats as protection for the money which he was carrying before he and Burgess picked up Muncy, and that Muncy never saw the gun, either because of its positioning or because Burgess, who was in the middle of the seat, blocked his view of it. Since the evidence linking White to the gun is not identical to the evidence against Muncy, the jury's differing verdicts as to those defendants were not inconsistent.
 
 
 26
 E. Sentencing Issues.
 
 
 27
 In addition to his challenges to his conviction, White raises two issues concerning sentencing. First, he argues that he should have been awarded a two-point reduction in his offense level for the conspiracy count because he pleaded guilty to that charge. Second, he contends that a lesser quantity of marijuana than the 25 pounds he agreed to buy should have been used to calculate the base offense level, because no actual marijuana was involved. We find no error in the trial court's determination of these issues.
 
 
 28
 The trial court, following the recommendation of the probation officer, denied White an adjustment for acceptance of responsibility despite finding that White accepted responsibility for his role in the marijuana conspiracy. The court reasoned that "the guidelines for acceptance of responsibility are towards the acceptance of the totality of the relevant criminal conduct," Transcript of Sentencing Hearing of October 12, 1990, Joint Appendix at 162, and concluded that because White continued to deny his involvement in the firearm count, he had not accepted responsibility for all of his relevant criminal conduct. White, relying on the commentary to Guideline § 2K2.4 and on § 5G1.2(a), asserts that the court was required to determine the issue of acceptance of responsibility separately for each count because of the mandatory consecutive nature of the sentence on the firearm count.
 
 
 29
 The provisions which White cites do contemplate that, for certain purposes, consecutive sentences are to be determined independently, and that some degree of separate consideration is given to relevant offense conduct when sentence on a firearm charge is imposed in conjunction with a sentence for an underlying offense. However, neither section addresses specifically the issue of acceptance of responsibility. In contrast, at the time of White's sentencing, section 3E1.1 and the commentary which accompanied it referred to a defendant's "affirmative acceptance of personal responsibility for his criminal conduct," and of "admission of involvement in the offense and related conduct ..." (emphasis supplied). We adopt the view expressed by Judge Wilkins that under that guideline a defendant must accept responsibility for all of his criminal conduct before the two-point reduction will be applied, United States v. Gordon, 895 F.2d 932, 936 (4th Cir.), cert. denied, 111 S.Ct. 131 (1990); see also United States v. Hill, 973 F.2d 459, 462 (6th Cir.), petition for cert. filed, --- U.S.L.W. ---- (1992) (holding that a defendant who does not admit responsibility for criminal conduct charged in a count dismissed pursuant to a plea agreement can properly be denied a two-point reduction). Therefore, we conclude that the trial court did not err in its interpretation of the relevant Sentencing Guidelines.[1]
 
 
 30
 White's contention that the trial court improperly based its offense level computation on 25 pounds of marijuana (more than 10 kilograms) is also meritless. Guideline § 2D1.4(d) clearly provides that, for convictions for conspiracy or attempt involving a controlled substance, "the offense level shall be the same as if the object of the conspiracy or attempt had been completed." See also, United States v. Rodriguez, 896 F.2d 1031, 1034 (6th Cir.1990). Although there may be cases where that amount is difficult to determine, this is not such a case. White ultimately negotiated a sale of 25 pounds of marijuana at a price of $1,000 per pound; when arrested, he had on his person and in his vehicle the sum of $25,000. Given those facts, the trial court was clearly justified in concluding that the object of the conspiracy was to possess at least 10 kilograms of marijuana.
 
 
 31
 For these reasons, we find that White was properly convicted of and sentenced for both conspiracy and possession or use of a firearm in relation to a drug trafficking offense, and we therefore AFFIRM his convictions and sentence in all respects.
 
 IV.
 
 32
 Having concluded that none of White's assertions of error requires reversal, we now turn to Burgess' appeal. Concluding, as we do below, that the evidence was insufficient to support his convictions, we do not reach the merits of his appeal from the order denying his motion for a new trial.
 
 
 33
 Burgess challenges the sufficiency of the evidence to support his conspiracy conviction. The evidence against Burgess has been summarized above. The legal standard against which it must be measured is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979)." United States v. Martin, 920 F.2d 345, 348 (6th Cir.1990), cert. denied, 111 S.Ct. 2038 (1991). The elements essential to a defendant's conviction under 21 U.S.C. § 846 are that there was a conspiracy, the defendant knew of it, and that he knowingly and voluntarily joined it. United States v. Barrett, 933 F.2d 355, 359 (6th Cir.1991).
 
 
 34
 Conspiracy cases often present difficult questions about the extent to which seemingly passive participants are nonetheless culpable members of the conspiracy. On the one hand, we have held that, in order for the evidence of a conspiracy to be sufficient, "[p]roof of a formal agreement is unnecessary, and a tacit or material understanding among the parties is sufficient to show a conspiracy." United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990), cert. denied sub. nom. Thorpe v. United States, 111 S.Ct. 978 (1991). Moreover, each defendant's connection to the conspiracy "need only be slight. [The defendant] need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." United States v. Hodges, 935 F.2d 766, 773 (6th Cir.), cert. denied, 112 S.Ct. 251 & 317 (1991) (citation omitted). However, " 'mere association with conspirators is not enough to establish participation in a conspiracy.' " United States v. Pearce, 912 F.2d at 162 (quoting United States v. Stanley, 765 F.2d 1224, 1243 (5th Cir.1985)).
 
 
 35
 Because the circumstances under which the government may allege a conspiracy are almost limitless in their variety, most cases of this type turn on their particular facts. Nevertheless, a review of the fact patterns in other cases provides some guidance in deciding whether a certain quantity of evidence is sufficient to support a finding of guilt beyond a reasonable doubt.
 
 
 36
 In Pearce, the defendant Pearce was found in a crack house together with a bag of money and a bag of crack cocaine. The co-defendant Thorpe, who shouted "It's a bust" when the house was raided, was found with two firearms within his reach and a round of ammunition in his pocket identical to those found in one of the firearms. In that case, as in the present case, the government argued that Thorpe's role in the alleged drug conspiracy with Pearce was that of a lookout. This Court reversed the conspiracy conviction, finding that the evidence was insufficient to support that conviction. On the other hand, in United States v. Martin, 920 F.2d 345, 348 (6th Cir.1990), cert. denied 111 S.Ct. 2038 (1991), this court upheld a conspiracy conviction based upon circumstantial evidence from which the jury could have inferred that Martin acted as a lookout for his co-defendant while walking through an airport, and where Martin used a false name on his ticket and fled from police after learning that drugs had been found on the co-defendant's person.
 
 
 37
 After a careful review of all of the evidence, and recognizing that this is a close case, we conclude that the proof of Burgess' participation in the conspiracy between Muncy and White is insufficient to support his conviction. There is abundant evidence from which the jury could have inferred Burgess' knowledge of the purpose of White's trip to Lexington, White's possession of money to be used to purchase marijuana, and even the presence of a weapon in the car. However, knowledge, without more, cannot support a conspiracy conviction. Burgess did not participate in any of the discussions with Rose or Officer Winings, nor was he mentioned, either directly or indirectly, in those conversations. He did not drive the car, cf. United States v. Olivo-Infante, 938 F.2d 1406, 1409 (1st Cir.1991) (a jury may infer knowing possession of drugs by the driver of a vehicle in which they are found), nor was there any evidence that he obtained any of the money or that he had any connection with the firearm. At the scene of the negotiations, the witnesses concurred that he did absolutely nothing other than sit in the same position in the car while White and Muncy worked out the final details of the sale. Other than being present when the drug transaction between Muncy, White and Officer Winings was taking place, there was no substantial evidence tending to prove that Burgess was a member of the conspiracy involving his co-defendants, White and Muncy, except Officer Winings' opinion that Burgess was acting as a lookout for them. It is indeed probable that the jury's verdict against Burgess was the result of that opinion testimony. We have held that Officer Winings' opinion was erroneously admitted, and in Burgess' case the highly prejudicial effect is obvious. We recognize that, "[a] conspiracy conviction should not be disturbed unless there is insufficient evidence from which a rational jury member could find beyond a reasonable doubt that the defendant was a member of a conspiracy," United States v. Pearce, 912 F.2d at 161, but in this case, as in Pearce, we find the evidence to be insufficient to sustain Burgess' conviction on the conspiracy charge.
 
 
 38
 It is apparent that Burgess' conviction on the conspiracy charge provided the underlying basis for his conviction on the firearm charge. There was no evidence that Burgess owned the firearm or used it in any manner in relation to the drug conspiracy involving his co-defendants, White and Muncy. His close proximity to the firearm hidden between the two front seats of White's car is not alone enough to sustain a conviction that he used or carried a firearm during and in relation to a drug trafficking crime. As mentioned earlier, the jury could easily have inferred that White, the owner of the car, concealed the weapon between the front seats as protection for the money which he was carrying for the drug transaction in which he and Muncy were engaged. While the evidence is sufficient to support White's conviction on the firearm charge, it is not sufficient to support Burgess' conviction on that charge. Burgess' convictions on both the conspiracy and the firearm charge are reversed, and on remand the district court is instructed to enter a judgment of acquittal on both offenses.
 
 V.
 
 39
 Both White and Burgess raised an additional issue after the briefing of this case. The issue, which arose following the recent panel decision in United States v. Morrow, 923 F.2d 427 (6th Cir.), vacated, 932 F.2d 1146 (6th Cir.1991), concerns whether the jury instructions given by the district court on the firearm count constituted plain error. We granted defendants-appellants' request that this issue be briefed. The Morrow decision was vacated, however, when a majority of the active members of this Court voted to rehear the case en banc. White and Burgess then requested that we delay our decision in this case until Morrow was finally decided.
 
 
 40
 The en banc decision in Morrow has now been issued. United States v. Morrow, Nos. 89-5418, 89-5780, 89-5710 (6th Cir. Oct. 7, 1992) (en banc). The jury instructions in that case, which were similar to those given here, were found not to constitute plain error. For the same reasons expressed by the majority in Morrow, we find that the jury instructions given by the district court on the firearm count, which were not objected to by defendants-appellants, did not constitute plain error.
 
 VI.
 
 41
 For the foregoing reasons, we AFFIRM Billy White's conviction under 18 U.S.C. § 924(c) and his sentence on both counts. We REVERSE David Burgess' convictions, and remand his case to the district court with instructions to enter a judgment of acquittal.
 
 
 
 *
 Honorable John D. Holschuh, Chief Judge of the United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Section 3E1.1 was amended, effective November 1, 1992. Prior to the amendment, Section 3E1.1(a) required the defendant to clearly demonstrate "a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The amendment provides for the reduction if the defendant clearly demonstrates "acceptance of responsibility for his offense." Application Note 1 in the amended Commentary provides, in part, that "... a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)." Apart from the question of retroactivity, which we need not decide, it is clear that even under the amended Section 3E1.1, White would not be entitled to the reduction, because he did not accept responsibility for the offense of conviction, i.e., the firearm charge