993 F.2d 1541
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Shiras H. RYLAND, Defendant-Appellant.
 No. 92-5549.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1993
Decided: May 13, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CR-92-25)
 Argued: Charles David Whaley, Morchower, Luxton & Whaley, Richmond, Virginia, for Appellant.
 Nicholas S. Altirmari, Office of the United States Attorney, Richmond, Virginia, for Appellee.
 On Brief: Anthony Spencer, Morchower, Luxton & Whaley, Richmond, Virginia, for Appellant.
 Richard Cullen, United States Attorney, S. David Schiller, Assistant United States Attorney, Richmond, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before WILKINSON and WILLIAMS, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 The defendant appeals rulings by the district court concerning the admissibility of a government exhibit and testimony by a bank fraud investigator; sufficiency of the evidence; the propriety of a jury instruction; the jury's access to the indictment during deliberations; and calculation of the sentence. We affirm the defendant's conviction but vacate her sentence and remand for resentencing.
 
 
 2
 On February 18, 1992, Shiras Ryland was charged in a sixteen count indictment with executing or attempting to execute a check kiting scheme to defraud NationsBank of Virginia, N.A. ("NationsBank"), and Dominion Bank ("Dominion") in November and December 1991 in violation of 18 U.S.C. # 8E8E # 2 and 1344. The matter was tried by a jury on May 27, 1992. At trial, over the defendant's objections, the United States introduced into evidence a chart of the relevant banking transactions captioned "Check Kiting Scheme" and offered the testimony of a NationsBank fraud investigator, Nancy Carolyn Hubbard. Following her certification as an expert, Ms. Hubbard stated her definition of "check kiting" and related how NationsBank became suspicious about Ms. Ryland's transactions.
 
 
 3
 The evidence at trial tended to show that the defendant maintained two checking accounts: one with her husband at Sovran Bank (now NationsBank) where she worked and one at Dominion in her name only. Over the course of a five-week period, Ms. Ryland deposited a number of checks drawn on her account at NationsBank into her account at Dominion and, in turn, deposited checks into the NationsBank account drawn on her account at Dominion. Many of the checks were written when there were insufficient funds in the accounts to cover them. The appellant testified that she intended to deposit enough money into the relevant account to honor a given check when it was presented for payment.
 
 
 4
 Although two checks were returned for insufficient funds, Ms. Ryland made good on all of them and the banks did not incur any outof-pocket loss.
 
 
 5
 The defendant moved to dismiss at the conclusion of the government's case in chief and again after the close of all of the evidence for insufficiency of the evidence. Ms. Ryland further objected to the district court's proposed charge on the elements of bank fraud and to allowing the jury to review the indictment during deliberations. The motion to dismiss was denied and the objections overruled.
 
 
 6
 The jury returned guilty verdicts on counts four through ten and fourteen and acquitted the defendant on the remaining charges.
 
 
 7
 At sentencing, the district court found the base offense level to be six. It then added one additional level for a loss involving more than $2,000 and two more levels for failure to accept responsibility. With a criminal category of "I" and a total offense level of 9, the resulting guideline range was four to ten months of imprisonment, three to five years of supervised release, fines ranging $10,000 to $1 million, and a $50 special assessment on each count, aggregating to $400. The defendant received two months incarceration for each count, to be served concurrently; two months of home detention for each count, to run concurrently and to be served following release from prison; and three years of supervised release for each count, also to run concurrently.
 
 
 8
 In this appeal, Ms. Ryland first contests the admission of the government's exhibit three, a chart summarizing the relevant transactions, entitled "Check Kiting Scheme." She contends that the summary did not assist the jury, was highly prejudicial, and created the impression that disputed facts had been conclusively established. The government maintains that taken as a whole, the admission of the exhibit was not an abuse of discretion since the jury was instructed on the requirement to find all of the elements of bank fraud in order to convict and that the charts were only as good as the evidence underlying them.
 
 
 9
 Rulings on evidentiary matters are examined for a clear showing of an abuse of discretion. United States v. Fells, 920 F.2d 1179 (4th Cir. 1990). Summaries may be submitted to the jury if there is a sufficient factual basis for admitting them and their usefulness outweighs possible confusion or prejudice. See United States v. Drougas, 748 F.2d 8, 25 (1st Cir. 1984). Care must be taken to insure that summaries do not function as pedagogical devices unfairly emphasizing part of the proponent's proof or create the impression that disputed facts have been conclusively established. Id.
 
 
 10
 Taken in isolation, a chart entitled "Check Kiting Scheme" suggests that the factual predicate for bank fraud has already been established. However, the trial court's cautionary instructions on the necessity of finding each element of the offense in order to reach a conviction and that charts were only as good as the underlying evidence minimized the risk of prejudice. As a result, the district court did not err in allowing the introduction of the summary into evidence.
 
 
 11
 The appellant next contends that the district court improperly qualified Ms. Hubbard as an expert. Ms. Ryland asserts that an expert was unnecessary because the facts were relatively simple, and further contends that Ms. Hubbard's testimony did not assist the jury, included an impermissible legal conclusion, and was highly prejudicial. The government argues that Ms. Hubbard was a properly qualified expert whose testimony was helpful to the trier of fact and whose opinion was based upon her experience as a bank fraud investigator. The United States further notes that the jury was instructed that it was for them to determine the existence of fraud.
 
 
 12
 Expert testimony is permissible where specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue. Fed. R. Evid. 702. The facts in this case involve a number of transactions in two separate financial institutions over a fiveweek period and touch upon esoteric subjects such as"float," the posting of deposits, and check clearing. Given the intricate nature of these matters, the district court's qualification of Ms. Hubbard as an expert was not an abuse of discretion.
 
 
 13
 Although an expert may not testify on whether the defendant did or did not have the mental state or condition constituting an element of a crime or defense, an expert may express an opinion on an ultimate issue. See Fed. R. Evid. 704. Nevertheless, such an opinion cannot amount to a legal conclusion. Shahid v. City of Detroit, 889 F.2d 1543 (6th Cir. 1989). During direct examination of Ms. Hubbard by the government, the district court cautioned the jury:
 
 
 14
 Ladies and gentlemen, it will be your ultimate responsibility to determine whether the defendant had the intent to commit these acts. This witness will give you some guidance in that area, but it is your ultimate responsibility to make that determination, not any opinion that this witness may have on the subject.
 
 
 15
 Joint Appendix ("J.A.") at 71. Shortly thereafter, Ms. Hubbard stated: "[c]heck kiting is a scheme used in an attempt to defraud a bank .... [i]t is perpetrated by drawing-withdrawing checks drawn on uncollected funds, and in essence, giving yourself an interest-free loan." Id.
 
 
 16
 Given the witness' expertise and the district court's guidance to the jury on how to treat her testimony, Ms. Hubbard's definition of check kiting was neither prejudicial nor an impermissible legal conclusion.
 
 
 17
 Ms. Ryland next asserts that the government failed to meet its burden of proof that she intended to defraud a financial institution, suggesting that the evidence showed only that she had been careless in her banking transactions. The standard of review on a sufficiency of the evidence claim is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after all evidence is construed in a light most favorable to the government. Jackson v. Virginia, 443 U.S. 307 (1979). We find that a reasonable jury could have properly returned guilty verdicts on the evidence produced at trial.
 
 
 18
 Next, the appellant maintains that the jury should not have been instructed on the elements of 18 U.S.C. § 1344(2) because, in her view, there was no evidence indicating a § 1344(2) violation. Jury instructions are examined to determine if they are supported by the evidence and are a correct statement of the law. United States v. Alkins, 925 F.2d 541 (2d Cir. 1991). Title 18, U.S.C.A. § 1344 (West Supp. 1992) states:
 
 
 19
 Whoever knowingly executes, or attempts to execute, a scheme or artifice-
 
 
 20
 (1) to defraud a financial institution; or
 
 
 21
 (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
 
 
 22
 shall be fined not more than $1,000,000 or imprisoned not more than thirty years or both.
 
 
 23
 The statute is construed disjunctively, so that one may commit bank fraud under § 1344(1) by defrauding a financial institution without making the false or fraudulent representations required by § 1344(2). United States v. Celesia, 945 F.2d 756, 758 (4th Cir. 1991). Put another way, check kiting can constitute a "scheme or artifice" to defraud in violation of § 1344(1), but merely passing worthless checks does not amount to "false representation" for § 1344(2) purposes. See id.
 
 
 24
 An indictment which tracks the language of both provisions is not dependent on the proof of the subsection (2) elements. Id. at 758. The indictment returned against Ms. Ryland follows the language of both subsections (1) and (2) but the government's case against the defendant rested entirely on the passing of worthless checks rather than separate acts of false or fraudulent pretenses, representations, or promises.
 
 
 25
 In its substantive instructions to the jury, the district court stated:
 
 
 26
 The crime of bank fraud as charged in counts 1 through 16 of the indictment have [sic] three essential elements, which are, one, that the defendant knowingly executed a scheme to defraud a financial institution to obtain monies and credits under the custody and control of a financial institution by means of false or fraudulent pretenses, representations, or promises.
 
 
 27
 Two, the defendant did so with the intent to defraud. And three, the financial institution was insured by the Federal Insurance Deposit Corporation....
 
 
 28
 ....
 
 
 29
 Check kiting is a term used to describe a form of bank fraud. In the scheme, the person has checking accounts at Bank A and Bank B. The person writes a check on the account at Bank A and deposits it into the account at Bank B with the intent to commit fraud.
 
 
 30
 At the time of the deposit, the person is aware that the check is not supported by sufficient funds in the account at Bank A; however, Bank B, unaware of this fact, gives the person immediate credit on his account at Bank B.
 
 
 31
 During the several day period that the check on Bank A is being processed for collection from that bank, the person writes a check on his accounts at Bank B and deposits it into the account at Bank A with the intent to commit fraud. At the time of the deposit of that check, Bank A gives the person immediate credit on his account there, and on the basis of that grant of credit pays the original check which is presented for collection.
 
 
 32
 By repeating this scheme, or some variation of it, the person could use the original credit originally given by Bank B as an interest-free loan for an extended period of time....
 
 
 33
 J.A. at 181-183.
 
 
 34
 The reference to "false or fraudulent pretenses, representations, or promises" was unnecessary since the evidence tended to show only that Ms. Ryland passed a series of worthless checks. Nevertheless, the instruction taken as a whole was an accurate description of check kiting as a form of bank fraud under § 1344(1) and we accordingly find no reversible error.
 
 
 35
 Ms. Ryland maintains that allowing the jury to review the indictment during deliberations was prejudicial and without probative value. We disagree. In overruling her objection at trial, the district court reasoned that the indictment would help the jury keep track of the counts. Id. at 148. The jury was cautioned that the indictment was only a formal accusation and not evidence of any kind against the defendant. Id. at 175. As a result, we find no error.
 
 
 36
 Unlike her other claims, the appellant's final ground for relief has merit. The Sentencing Guidelines require that the greater of actual or intended loss be taken into account when determining the base offense level, although such loss need not be calculated with precision. U.S.S.G. § 2F1.1(b)(1) and comment 8. In calculating the amount of the loss incurred by the banks, the district court added the checks involved in counts four through ten and fourteen and used the total, $2,345, to increase the base offense by one level under § 2F1.1(b)(1)(B). Relying on comment 7, the district court concluded that both the actual loss, incurred for only a short time, and the intended loss, were greater than $2,000, making a one level increase appropriate. J.A. at 271.
 
 
 37
 Little authority exists on ascertaining loss under the Sentencing Guidelines in check kiting cases where the victims have not suffered out-of-pocket injury. A check kiting scheme is, in essence, a method of obtaining an unauthorized series of short-term loans and in that regard, it is analogous to fraudulent loan cases. The loss for sentencing purposes in fraudulent loan cases is the actual injury to the victim. § 2F1.1, comment 7(b). However, the loss calculation does not include monies already repaid at the time the offense is discovered. Id.; accord United States v. Deutsch, Nos. 461, 862, 1993 WL 32685 (2d Cir. February 11, 1993). In this case, the loss to the banks under any calculus does not exceed $2,000 once the checks written and covered prior to apprehension are withdrawn from consideration. As a result, the district court improperly concluded that an increase in the offense level was warranted under § 2F1.1(b)(1)(B). We therefore vacate Ms. Ryland's sentence and remand to the district court for it to re-determine the appropriate offense level.
 
 
 38
 Accordingly, we affirm Ms. Ryland's conviction, vacate her sentence, and remand for resentencing.
 
 AFFIRMED IN PART, VACATED IN PART AND REMANDED